**Robert Edward PINE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. B14–94–00233–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 1, 1994.

Rehearing Overruled Dec. 22, 1994.

George W. Lang, II, Houston, for appellant.

Mary Peter Cudd, C.J. Muller, San Antonio, for appellee.

Before SEARS, DRAUGHN and BARRON, JJ.

OPINION

SEARS, Justice.

Appellant entered a plea of not guilty before a jury to the offense of Cruelty to Animals. TEX.PENAL CODE ANN. § 42.11(a)(2) (Vernon 1989).[1] The jury found him guilty, and the trial court assessed punishment at a $3000.00 fine and 180 days in jail, probated for two years. Appellant appeals his conviction, bringing a total of nine points of error. We affirm.

In his original brief, Appellant brings seven points of error; his reply to the State's brief contains two additional points, including a double jeopardy claim based on *Fant v. State*, 881 S.W.2d 830 (Tex.App.—Houston [14th Dist.] 1994, pet. granted). A plea of double jeopardy may be raised for the first time on appeal. *Jones v. State*, 586 S.W.2d 542, 544 (Tex.Crim.App.1979); *Diaz v. State*, 762 S.W.2d 701, 703 (Tex.App.—Houston [14th Dist.] 1988), *pet. ref'd* 796 S.W.2d 183 (Tex.Crim.App.1990). However, Appellant failed to include this point in his original brief, and a claim of double jeopardy, like any other constitutionally protected right, may be waived. *Id.*

Under Texas Rule of Appellate Procedure 74, all points of error sought to be reviewed are to be included in the original brief. *Rochelle v. State*, 791 S.W.2d 121, 124 (Tex.Crim.App.1990); *see also Allen v. State*, 795 S.W.2d 15, 16 (Tex.App.—Houston [14th Dist.] 1990, no pet.). Supplemental briefs may be filed and considered only with leave of the appellate court, and the decision whether to consider new points raised in a supplemental brief is left to the sound discretion of the reviewing court. *Rochelle*, 791 S.W.2d at 124. Although this Court allowed Appellant to file his reply brief, we decline to consider the two new matters raised in the brief, including Appellant's double jeopardy claim.[2]

---

1. *Renumbered and amended by* Acts 1993, 73rd Leg., ch. 900, § 1.01, amendment effective Sept. 1, 1994 (current version at TEX.PENAL CODE ANN. § 42.09(a)(2) (Vernon 1994)).

2. Even were we to address Appellant's point, his argument fails. *Fant* specifically addressed double jeopardy in the context of the Texas drug forfeiture statute, a statute not at issue in the case before us.

In his original brief, Appellant challenges: (1) the trial court's refusal to grant a continuance; (2) the trial court's denial of a motion to suppress; (3) the sufficiency of the evidence; (4) the court's charge to the jury; (5) the admission of extraneous offenses; and (6) the trial court's assessing punishment instead of the jury. We will address the sufficiency points first.

## SUFFICIENCY OF THE EVIDENCE

In his third point of error, Appellant claims the trial court erred in denying his Motion for Instructed Verdict, and Motion for New Trial, because the evidence is insufficient to support the jury's verdict. In his fourth point of error, Appellant claims the trial court erred in denying his Motion for New Trial because the jury's verdict was "contrary to the overwhelming weight and preponderance of the evidence."

We review a challenge to the trial court's ruling on a motion for instructed verdict as a challenge to the sufficiency of the evidence. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). The well-established standard for reviewing the sufficiency of the evidence is that an appellate court must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim. App.1993). In conducting this review, the appellate court is not to re-evaluate the weight and credibility of the evidence, but is only to ensure that the trier of fact reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993). The same standard applies in both direct and circumstantial evidence cases. *Ransom v. State*, 789 S.W.2d 572, 577 (Tex.Crim.App.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990).

Appellant's fourth point of error claims the verdict was "against the great weight and preponderance of the evidence." This Court has consistently applied this "factual sufficiency" review only to cases in which the defendant has the burden of proof on his affirmative defense or another fact issue. *See Smith v. State*, 874 S.W.2d 269 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd), and cases cited therein (all citing *Meraz v. State*, 785 S.W.2d 146, 154 (Tex.Crim.App. 1990)). Here, Appellant challenges the sufficiency of the evidence to support the jury finding that he intentionally or knowingly committed the charged offense. Because the defendant's mental culpability is an element of the crime on which the State has the burden of proof, the correct standard of review to be applied is the *Jackson* standard, as stated above. *Smith*, 874 S.W.2d at 272. Therefore, applying the *Jackson* standard to both of Appellant's sufficiency points, we examine the facts presented at trial in the light most favorable to the jury's verdict.

Appellant is the manager of a trailer park, located on approximately forty acres of his property. On January 28, 1993, Sheriff's Deputy Kevin Brumfield was dispatched to Appellant's property to investigate an anonymous complaint of cruelty to animals. When Deputy Brumfield entered the property, he first observed several horses, which appeared to be in "good shape." He also saw four men standing on the road, informed them of the reason for his visit, and asked them if there were any other animals on the property. One of the men, later identified as Appellant's employee Wayne Reid, told Brumfield that the animals he was referring to were located in the "back forty," and that the deputy could follow him, as he was on his way there. After following Reid to another part of the property, Deputy Brumfield saw several animals standing in a pasture, all of which appeared unhealthy, with bones and ribs showing. Farther along in the pasture, Brumfield and Reid came upon the colt that is the subject of the current case.

The colt was wet and muddy and could not stand. It had no energy, and its ribs were visible through the skin. Later witnesses described the colt as "in very, very poor condition," and "emaciated." Deputy Brumfield examined the colt's teeth, and could find

no food particles or residue, an indication that the colt had not been eating. Although fresh food was laid out by the colt's head, the pasture in which it was laying was wet and muddy and the grass was very short and unsuitable for grazing. In addition, there was a smell of raw sewage from an open trench full of liquid, around which the deputy saw hoofprints. Upon seeing the condition of the colt, Deputy Brumfield asked about the possibility of obtaining a veterinarian, but he was informed that Appellant, the colt's owner, was out of town and no one else had the authority to call a vet. Brumfield took it upon himself to find a vet to tend to the colt, as he believed that in its weakened condition the colt could not survive through the night.

Deputy Brumfield contacted the neighboring Stevens & Pruett Humane Ranch ("the Ranch"), a non-profit organization which takes in abused, abandoned, and neglected animals. James Pruett called Dr. Mike Brady, a volunteer veterinarian for the Ranch. Dr. Brady examined the colt, and determined that it was at least 200 pounds underweight as a result of malnutrition and parasites. Dr. Brady recommended transferring the colt to a location where it could be provided the intensive therapy necessary to save its life. Dr. Brady, James Pruett, and Deputy Brumfield assisted in moving the colt from Appellant's property to the Ranch, where it was treated for about 10 days. Ultimately, the Ranch personnel took the colt to the veterinary school at Texas A & M University, where it received extensive treatment and eventually recovered. Two days after the colt was taken from Appellant's property, Deputy Brumfield returned and arrested Appellant for cruelty to animals.

The Texas Penal Code provides that one commits the offense of cruelty to animals if he "intentionally or knowingly ... fails unreasonably to provide necessary food, care, or shelter for an animal in his custody." TEX.PENAL CODE ANN. § 42.11(a)(2). Appellant claims the evidence adduced at trial is insufficient to prove that he "intentionally or knowingly" violated the statute.

■ A person acts with intent with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App.1982); TEX.PENAL CODE ANN. § 6.03(a). A person acts with knowledge when he is aware of the nature of his conduct, or that the circumstances surrounding his conduct exist. *Humason v. State*, 728 S.W.2d 363, 365 (Tex.Crim.App.1987); *Whitworth v. State*, 808 S.W.2d 566, 568–69 (Tex. App.—Austin 1991, pet. ref'd); TEX.PENAL CODE ANN. § 6.03(b). A person may act unintentionally and still commit a criminal act, provided he acts with knowledge. *Dockery v. State*, 542 S.W.2d 644, 649 (Tex.Crim. App.1976) (opinion on reh'g); *Vollbaum v. State*, 833 S.W.2d 652, 656 (Tex.App.—Waco 1992, pet. ref'd).

Whether an accused acted with intent or knowledge is a question to be determined by the trier of fact. *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex.Crim.App.1974); *Parramore v. State*, 853 S.W.2d 741, 745 (Tex. App.—Corpus Christi 1993, pet. ref'd). Knowledge and intent may be inferred from the conduct of, remarks by, and circumstances surrounding the acts engaged in by the defendant. *Turner v. State*, 600 S.W.2d 927, 929 (Tex.Crim.App. [Panel Op.] 1980); *Jones v. State*, 687 S.W.2d 430, 432 (Tex. App.—Houston [14th Dist.] 1985, no pet.)

■ Appellant cites two cases for the rule that when a statute requires the criminal act be committed knowingly, "should have known" is not sufficient for conviction. *See Axelrod v. State*, 764 S.W.2d 296 (Tex.App.—Houston [1st Dist.] 1988), *pet. dism'd* 789 S.W.2d 594 (Tex.Crim.App.1989); and *Starr v. State*, 734 S.W.2d 52 (Tex.App.—Houston [1st Dist.] 1987, no pet.). However, both of the cited cases applied the "actual knowledge" standard to the specific offense of serving alcohol to a minor. We find that when the charged offense is cruelty to animals, knowledge and intent may be inferred from the circumstances surrounding the offense.

■ In addition to the facts set forth above, the following evidence was introduced at trial to show the circumstances surrounding Appellant's conduct with regard to the colt's care and feeding. Appellant and Wayne Reid, Appellant's employee, testified

that another employee named Randy Cole had the responsibility of feeding the animals, and that a stock of food, including oats, rice, and hay, was kept on the property for the animals. In addition, the pasture was planted in ryegrass and clover, and a supply of fresh water was available for the animals from two stock tanks on the property. However, evidence was presented that Appellant was in charge of the premises, and it was ultimately his responsibility to ensure the animals were fed, even though he had delegated the actual feeding to another.

Appellant testified that he usually only saw the animals from a distance, and would inspect them every 2 to 3 weeks. However, several witnesses stated that it was readily obvious to any observer that the colt was suffering from malnutrition. Additionally, Dr. Brady testified that it would have taken 5 to 6 weeks for the colt to reach its current malnourished condition if it had been receiving a small amount of feed. His opinion was echoed by Peggy Royster, a Ranch volunteer, and by Kathy McCoy, a veterinary technician who tended to the colt before it was transported to the Ranch. In addition, the State produced evidence that besides the colt, several other animals observed by Deputy Brumfield were also suffering from malnutrition. Even if Appellant had not specifically seen the colt during his "inspections," the presence of these other uncared-for animals makes it more probable than not that Appellant knew that all of the animals under his care were not receiving sufficient nutrition.[3]

We hold that the above evidence is sufficient for a rational trier of fact to have inferred from the acts of Appellant and the

facts and circumstances surrounding the colt's condition that Appellant knowingly or intentionally failed to provide necessary food, care or shelter for the colt. We overrule Appellant's third and fourth points of error.

## MOTION FOR CONTINUANCE

In his first point of error, Appellant contends the trial court erred in refusing to grant him a continuance. Appellant filed a motion asking the trial court to continue the criminal case until a final judgment was rendered in the civil forfeiture suit brought by the State.[4] In reviewing the appellate record, we note that the motion for continuance was unsworn. All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for a continuance. Tex.Code Crim.Proc.Ann. art. 29.08. The trial court does not err in refusing to grant a continuance which does not comply with the requirements of Article 29.08. *Smith v. State,* 676 S.W.2d 379, 385 (Tex.Crim.App.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985); *Hall v. State,* 711 S.W.2d 108, 113 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). We overrule Appellant's first point of error.

## MOTION TO SUPPRESS

In his second point of error, Appellant contends the trial court erred in overruling his motion to suppress evidence he claims was obtained in violation of state law and the United States and Texas Constitutions.[5] He further argues that the illegally obtained evidence was subsequently used against him at trial in violation of Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon Supp.1994). Specifically,

---

3. Appellant challenges the admission of the evidence about the other animals as extraneous offenses. However, in reviewing a sufficiency challenge, this Court must examine all the evidence, whether properly or improperly admitted. *Bobo v. State,* 843 S.W.2d 572, 575–76 (Tex. Crim.App.1992); *Rodriguez v. State,* 819 S.W.2d 871, 873 (Tex.Crim.App.1991).

4. The State sought civil forfeiture of all of the cruelly treated animals pursuant to Tex.Health & Safety Code Ann. § 821.023 (Vernon 1992) in *State v. Approximately (15) Horses and (2) Head of Cattle,* No. 19,369 B (County Court at Law No. 3, Brazoria County, Tex., April 21, 1994).

5. *See* U.S. Const. amend. IV; *and* Tex Const. art. I, § 9. Although Appellant claims violations of both the federal and state constitutions, he makes no separate argument pursuant to the Texas Constitution. Therefore, we will review the contention of constitutional violation under the auspices of the United States Constitution, without analyzing whether the Texas Constitution should be interpreted differently than the federal constitution. *See Brimage v. State,* No. 70,105, slip op. at 16, n. 11, 1994 WL 511395 (Tex.Crim.App. September 21, 1994).

Appellant contends that prior to removing the colt from his property, Deputy Brumfield was required by statute to obtain a warrant to seize the animal. Because the deputy failed to obtain the warrant, Appellant maintains that the removal of the colt constituted an illegal seizure of evidence, and any evidence obtained as a result of the illegal seizure should have been suppressed.

The seizure of the colt was undertaken pursuant to TEX.HEALTH & SAFETY CODE ANN. § 821.022 (Vernon 1992), which provides:

> If a county sheriff, constable, or deputy constable or an officer who has responsibility for animal control in a municipality has reason to believe that an animal has been or is being cruelly treated, he may apply to a justice court in the county or to a municipal court in the municipality in which the animal is located for a warrant to seize the animal.

We have been unable to find, and neither party has cited, any cases construing this provision in terms of the constitutional implications of the failure of a deputy to obtain such a warrant prior to the seizure of a *cruelly treated animal*. However, in the context of criminal investigations, there is a wealth of case law discussing the failure of law enforcement personnel to obtain a search warrant. A "search warrant" may be issued to search for *and seize* property or items constituting evidence of an offense, or evidence tending to show that a particular person committed an offense. TEX.CODE CRIM. PROC.ANN. art. 18.02(10) (Vernon Supp.1994) (emphasis added). Therefore, in analyzing Appellant's constitutional arguments, we analogize to evidentiary seizures effected in the absence of a search warrant.

 The State argues that the seizure of the colt was proper under the "emergency doctrine." The emergency doctrine is an exception to the constitutional prohibition of searches and seizures carried out without a warrant from a magistrate. *Bray v. State,* 597 S.W.2d 763, 764 (Tex.Crim.App.1980). The Fourth Amendment does not prohibit a warrantless search and seizure when there is a need to act immediately to protect or preserve life, or to prevent serious injury. *Id.; see also Mincey v. Arizona,* 437 U.S. 385,

392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). In order to justify the warrantless seizure under the emergency doctrine, the State must show (1) that the deputy had probable cause to believe the animal was being cruelly treated, and (2) that obtaining a warrant was impracticable because the deputy reasonably believed there was an immediate need to act to preserve a life. *See Brimage v. State,* No. 70,105, slip op. at 25 (Tex.Crim.App. September 21, 1994); *Crane v. State,* 786 S.W.2d 338, 346 (Tex.Crim.App. 1990). In assessing an officer's belief that a warrantless intrusion is justified by an exigent circumstance, we apply an objective standard of reasonableness, judging the circumstances as they exist at the time the decision was made to go forward without a warrant. *Brimage,* slip op. at 25; *Janicek v. State,* 634 S.W.2d 687, 691 (Tex.Crim.App. 1982); *Stewart v. State,* 681 S.W.2d 774, 778 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). The burden of proof is on the State to justify a warrantless intrusion. *Brimage,* slip op. at 25; *Bray,* 597 S.W.2d at 765.

 In this case, Deputy Brumfield entered the property to investigate an allegation of cruelty to animals. When he observed the colt and its condition, he had the requisite probable cause at that time to find that an animal was being cruelly treated. *See Crane,* 786 S.W.2d at 338. The contested issue is whether the deputy reasonably believed there was an immediate need to act to preserve a life, such that it would have been impracticable to obtain a warrant.

Deputy Brumfield testified that when he saw the colt, it was in extremely poor condition, and he immediately attempted to obtain a veterinarian to begin treatment. He admitted that it would have taken only ten to twenty minutes to drive to a nearby town and request a seizure warrant from the justice of the peace. Instead, thinking the colt would not survive through the coming night without help, the deputy went in search of a veterinarian. Deputy Brumfield testified that he waited for Dr. Brady for an hour to an hour and a half before returning with him to Appellant's property. Appellant argues

that this waiting period proves that the circumstances were not so exigent that the deputy could not have made the short drive to obtain a warrant. We disagree. Although Deputy Brumfield stated that he had experience with horses, and could recognize when a horse was severely malnourished, his level of experience clearly did not rise to that of an expert on the medical treatment of horses. Thus, although the deputy gave his lay opinion that the colt could not survive the night without treatment, plainly that determination could not be made with any certainty until the colt was examined by a veterinarian.

The evidence shows that Dr. Brady arrived to treat the colt as night was falling. *At that time* the decision was made *by Dr. Brady* that the colt had to be moved to the Ranch to save its life. Deputy Brumfield did not know that he would be required to obtain a seizure warrant until Dr. Brady made the determination that the colt would have to be removed from the property. Therefore, the fact that Deputy Brumfield waited for Dr. Brady and could have used that time to obtain the seizure warrant is of no consequence. It is from the moment that Dr. Brady made the decision to remove the colt that we examine the reasonableness of Deputy Brumfield's belief that obtaining a warrant would be impracticable.

The evidence shows that it was fully dark when Dr. Brady made the decision to transport the colt to the Ranch. He said the colt would not survive the night. Although the justice of the peace's office was only ten to twenty minutes away, by the time Dr. Brady made the determination that the colt needed to be moved in order to save its life, it was after the time the office would normally be closed. There is no evidence that if Deputy Brumfield had attempted to contact a justice of the peace, one would have been immediately available to issue a seizure warrant. On the other hand, there is ample evidence in the record that the colt needed immediate emergency care which could not be provided on the property, and that it was in danger of dying before a warrant could be obtained. Thus, we find that Deputy Brumfield's belief that an emergency justified seizing the colt without a warrant is objectively reasonable.

This Court is aware that exceptions to the warrant requirement must be "specifically established and well-delineated." *Mincey,* 437 U.S. at 390, 98 S.Ct. at 2412 (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). We have been unable to find a precedent for applying the emergency doctrine to an emergency involving saving the life of an *animal.* However, the "concrete factual situation" presented to us by this case compels us to find that Deputy Brumfield was presented with an emergency situation which made the warrantless seizure reasonable. *See Fearance v. State,* 771 S.W.2d 486, 509 (Tex.Crim. App.1988), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989); *see also Janicek,* 634 S.W.2d at 691.

Because the need to preserve the life of the colt justified Deputy Brumfield's warrantless seizure of the animal, we hold that the Fourth Amendment was not violated. Having found no violation of constitutional proportions, we further hold that Appellant was not entitled to the protections of the Article 38.23 exclusionary rule. Thus, the trial court committed no error in refusing to grant Appellant's motion to suppress. We overrule Appellant's second point of error.

## JURY INSTRUCTIONS

■ In his fifth point of error, Appellant claims the trial court erred by instructing the jury that it was required to find beyond a reasonable doubt, that Appellant "intentionally *or* knowingly" unreasonably deprived the colt of "food, care, *or* shelter," when the information charged that Appellant "intentionally *and* knowingly" failed to provide "food, care, *and* shelter" (emphasis added). We find no error. Although the State may allege different methods for committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive. *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim. App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992). We overrule Appellant's fifth point of error.

## EXTRANEOUS OFFENSES

■ In his sixth point of error, Appellant contends the trial court erred in permitting

the State to introduce evidence concerning the condition of other animals located on the property where the colt was found. The State argues that Appellant waived his right to complain on appeal by not making the proper objections every time the evidence was introduced, and that such evidence is admissible as background contextual evidence. We address the waiver argument first.

During its case in chief, the State first attempted to bring in evidence of a malnourished cow seen by Deputy Brumfield on the "back forty" before he saw the colt. Appellant objected that the evidence was extraneous and highly prejudicial. *See Montgomery v. State*, 810 S.W.2d 372, 386–390 (Tex.Crim. App.1990) (op. on reh'g) (delineating the proper objections to extraneous offense evidence). When the trial court overruled his objection, counsel requested and received a running objection to "all this testimony." In addition, when the prosecutor asked Deputy Brumfield about the other apparently malnourished animals he saw, Appellant again objected and again received a running objection. Thereafter, the State introduced evidence that other animals on the property had visible ribs, were extremely malnourished, and were taken from the property and placed at the Ranch. Later in the trial, when the State played a videotape for the jury of the colt and the other animals, the following exchange occurred:

> [Defense counsel]: I believe I also, Your Honor, have a running objection to testimony of other animals.
>
> THE COURT: That's correct. You do.

Generally, an objection must be made every time inadmissible evidence is offered, at the peril of waiving the objection. *Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App. 1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991); *Juhasz v. State*, 827 S.W.2d 397, 399 (Tex.App.—Corpus Christi 1992, pet. ref'd). However, the so-called "running objection" has a deeply rooted place in the jurisprudence of Texas, and is permitted by the Texas Rules of Appellate Procedure. *See* TEX.R.APP.P. 52(b); *see also White v. State*, 784 S.W.2d 453, 455 (Tex.App.—Tyler 1989, pet. ref'd). The legitimate function of a running objection is to do away with redundant and disruptive individual objections, and promote the orderly progression of trial. *Sattiewhite v. State*, 786 S.W.2d 271, 284 n. 4 (Tex.Crim.App.1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990). Because the trial court expressly affirmed that it granted a running objection to the extraneous offense evidence, we find that error was properly preserved for appellate review. *See Grunsfeld v. State*, 813 S.W.2d 158, 165 n. 3 (Tex.App.—Dallas 1991), *affirmed*, 843 S.W.2d 521 (Tex.Crim. App.1992) (holding a running objection preserved error when the trial court stated expressly that no further objection needed to be made).

■ Evidence showing other bad acts that a defendant may have committed is usually excluded because an accused should be tried only for the crime alleged in the indictment and not for being a criminal generally. *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim.App.1994); *Lockhart v. State*, 847 S.W.2d 568, 570 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993); TEX.R.CRIM.EVID. 404(b). However, extraneous offenses may be admitted for other purposes, such as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Lockhart*, 847 S.W.2d at 571 (quoting Rule 404(b)'s listed exceptions). Evidence is admissible if it serves to make an elemental fact more or less probable. *Montgomery*, 810 S.W.2d at 386.

■ In this case, Appellant contested his knowledge that the colt was suffering from malnutrition. Deputy Brumfield testified that there were several animals on the "back forty" that also exhibited symptoms of starvation and malnutrition. If it were only the colt that had signs of malnutrition, it could be argued that the colt had a specific ailment other than malnutrition. The fact that several other animals on the property also exhibited a lack of food, care or shelter makes it more likely that the condition of the colt was due to lack of food, care or shelter. Given that Appellant inspected the animals every two to three weeks, the evidence of the other animals' condition makes it more probable

**634**

that Appellant *knew* about the colt's condition. Even if the colt was not visible on these occasions, the appearance of the other animals should have alerted Appellant that all of the animals, including the colt, were not receiving the proper food and care. We hold that the evidence of the condition of the other animals was relevant to show the elemental fact of Appellant's knowledge of the colt's condition. Appellant's sixth point of error is overruled.

### PUNISHMENT ASSESSMENT

■ In his seventh point of error, Appellant contends the trial court erred in assessing punishment because Appellant filed a motion in which he requested that the jury assess punishment. The Texas Code of Criminal Procedure provides:

> [I]f a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided, however, that (1) in any criminal action where the jury may recommend probation and the defendant *filed his sworn motion for probation* before the trial began, and (2) in other cases where the defendant *so elects in writing* before the commencement of the voir dire examination of the jury panel, the punishment shall be assessed by the same jury ... [emphasis added].

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 2(b) (Vernon Supp.1994). Where the defendant files no election, the trial court has the duty to assess punishment. *Toney v. State*, 586 S.W.2d 856, 858 (Tex.Crim.App.1979); *Gibson v. State*, 549 S.W.2d 741, 742 (Tex.Crim. App.1977).

On the day of trial, Appellant filed a document entitled "Defendant's Statement in Support of Jury Probation." The document "informs this Court of [Appellant's] intention to make a motion for probation in the event he is found guilty." Appellant claims this document constitutes a motion requesting that the jury assess punishment and recommend probation. We disagree. Clearly, the document only expresses Appellant's conditional intent to request probation *in the future*. Other than the title's inclusion of the words "Jury Probation," there is nothing in this document to alert the trial court that Appellant is making an election under Article 37.07 to have the jury assess punishment. Because Appellant did not properly evoke his statutory right to have the jury assess punishment, it was the judge's responsibility to assess the punishment. *Gibson*, 549 S.W.2d at 742; *Tuebner v. State*, 742 S.W.2d 57, 58 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd), *cert. granted*, 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 621 (1989). We overrule Appellant's seventh point of error.

Having overruled all of Appellant's points of error, we hold that the judgment of the trial court is AFFIRMED.