Sorell v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00162-CR







Misty Sorell, Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0942507, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING








 After her motion to suppress was denied, appellant Misty Sorell pleaded guilty to
aggravated possession of a controlled substance, namely, cocaine. See Tex. Health & Safety Code
Ann. § 481.115 (West 1992). The trial court assessed punishment at seven years' imprisonment,
probated. In a single point of error, appellant asserts that the trial court abused its discretion in
overruling her motion to suppress the cocaine, because it was discovered during an unlawful
warrantless search. We will affirm.



FACTUAL AND PROCEDURAL BACKGROUND


 On April 13, 1994, appellant called 911 to inquire about the effect of taking seven
Erythromycin (a prescription antibiotic) with beer. Austin Police Officer Marva Murray and
Emergency Medical Services ("EMS") were dispatched to investigate the situation. Officer
Murray knocked on appellant's door while the two EMS technicians unloaded their equipment. 
A white male opened the door and stepped back when he saw the uniformed officer. Officer
Murray entered the apartment and stated that she and EMS were responding to a 911 call. When
appellant saw Officer Murray, she became upset with the white male and began to storm off into
the bedroom. Officer Murray told her that EMS needed to look at her. Appellant then motioned
Officer Murray and the EMS technicians to follow her into the bedroom. Appellant appeared to
be quite intoxicated and upset when Officer Murray and EMS arrived.

 While one of the EMS technicians examined appellant, Officer Murray and the
other technician went outside to speak with the white male who had opened the door, but they
could not find him. Officer Murray and the technician then returned to the apartment to look for
appellant's identification. In the living room, Officer Murray and the technician located
appellant's purse and searched it for identification. Officer Murray overheard appellant tell the
technician who was examining her that she and her boyfriend had been fighting and she had
threatened to commit suicide. Appellant said that she and her boyfriend commonly threatened to
commit suicide but that she really had no intention of committing suicide that evening. 

 Officer Murray and the EMS technician returned to the bedroom where the other
EMS technician was trying to determine what substances appellant had ingested. Officer Murray
observed that appellant seemed confused; although she was conscious and not incoherent,
questions had to be repeated several times before she responded. The technicians explained to
appellant that they could not help her unless they knew what substances she had ingested.

 Appellant eventually estimated that she had ingested a twelve-pack of beer, about
seven Erythromycin tablets, a fourth of a tablet of Rohypnol, and an "eight-ball" or about fifteen
lines of cocaine. Appellant was not certain, however, how much of each medication she had
consumed. The EMS technicians informed appellant that because of the substances she reported
ingesting, they had to transport her to the hospital.

 Officer Murray and the EMS technicians began looking around the apartment for
the containers that held the medications appellant claimed to have ingested. Officer Murray said
the technicians wanted the containers to get a better idea of the strength and quantity of the pills
appellant had consumed and to confirm the identity of the substances. Officer Murray, searching
in the living room, picked up an unzipped black nylon duffel bag that was next to appellant's
purse. Inside the bag Officer Murray found, among other things, $4,985 in cash, a bag containing
64.2 grams of cocaine, and ten Rohypnol tablets. At that point, appellant entered the living room
to put her shoes on in preparation for being transported to the hospital. Appellant and EMS then
left for the hospital, and Officer Murray departed at the same time. At some point, the EMS
technicians locatedor appellant gave themone and a half Rohypnol tablets and one Erythromycin
tablet, which were taken to the hospital.

 After she was released from the hospital, appellant was arrested and charged with
aggravated possession of cocaine. The trial court held a suppression hearing to determine the
lawfulness of the search that led to the discovery of the cocaine. Officer Murray was the only
witness to testify at the suppression hearing. On the basis of Officer Murray's testimony, the trial
court denied appellant's motion to suppress the evidence of cocaine. Appellant then pleaded guilty
to the charged offense and now appeals the trial court's denial of the motion to suppress.



DISCUSSION


 Appellant asserts that the trial court abused its discretion in overruling her motion
to suppress the cocaine because the search did not fall within an exception to the requirement that
a warrant be obtained. The State argues that the cocaine should not be suppressed because the
search came within the "emergency doctrine" exception to the search-warrant requirement.

 In general, warrantless searches and entries are constitutionally prohibited. U.S.
Const. amends. IV, XIV; Tex. Const. art. I, § 9. The emergency doctrine, however, is an
exception which may justify a warrantless search and seizure or entry. Bray v. State, 597 S.W.2d
763, 764 (Tex. Crim. App. 1980); Spears v. State, 801 S.W.2d 571, 574 (Tex. App.Fort Worth
1990, pet. ref'd). A warrantless search or entry comes within the emergency doctrine exception
if the search or entry is compelled by a need to act immediately to protect or preserve life or to
prevent serious injury. Mincey v. Arizona, 437 U.S. 385, 392 (1978); Bray, 597 S.W.2d at 764. 
A search or entry pursuant to the emergency doctrine is justified only for so long as the
emergency exists. Mincey, 437 U.S. at 393; Bray, 597 S.W.2d at 764-65.

 In assessing an officer's conclusion that a warrantless search or entry was justified
by an emergency, courts will employ an objective standard of reasonableness, judging the
circumstances as they existed at the time of the alleged emergency. Pine v. State, 889 S.W.2d
625, 631 (Tex. App.Houston [14th Dist.] 1994, pet. ref'd); see also Bray, 597 S.W.2d at 765. 
The reasonableness of the search or entry is determined by balancing the need to intrude against the invasion of privacy. Camara v. Municipal Court, 387 U.S. 523, 536-37 (1967). The
burden of proof is on the State to show that the warrantless search or entry fell within the
emergency doctrine. Bray, 597 S.W.2d at 765.

 Appellant contends that the following portion of Officer Murray's testimony
indicates that Officer Murray did not have an objectively reasonable belief that an emergency
actually existed:



Q. Do you know who it was that called the 911 operator?


A. Looking at the call after the fact, I believe it was Ms. Sorrell [sic].


Q. So you have heard a tape of the call or a transcript of it?


A. No, sir. Looking at the actual call on the screen of the computer terminal in
my vehicle.


Q. I see. What information were you given, just that it was an attempted suicide
or just that there was a 911 call from Misty Sorrell [sic]?


A. The callI'm not sure if it was my error or the dispatcher's error, but when
she broadcast it over the radio, I remember something about a boyfriend
calling in because a girlfriend had attempted to commit suicide and had
overdosed, I believe, on pills or something to that effect.



Appellant also argues that even if Officer Murray had an objectively reasonable belief that an
emergency existed at the time she entered appellant's apartment, the emergency situation ended
when appellant stated that she had no intention of committing suicide. In the alternative, appellant
argues that even if an emergency situation existed before the search, the search was not necessary
to preserve life but was instead a pretext to search for the cocaine.

 In a suppression hearing, the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court may accept or reject all or part of a
witness's testimony. Taylor v. State, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980). In
reviewing the trial court's decision, an appellate court does not engage in its own factual review;
it determines only whether the record contains sufficient evidence to support the trial court's fact
findings. Romero, 800 S.W.2d at 543. Where no findings are given, the appellate court
presumes the trial court found whatever facts where needed to support the ruling. State v.
Johnson, 896 S.W.2d 277, 280 (Tex. App.Houston [1st Dist.] 1995, pet. granted). 

 In the present case, we believe that the trial court could reasonably have found that
the circumstances Officer Murray testified about reflected an objectively reasonable belief that an
emergency was occurring at the time Officer Murray arrived and continued until the EMS team
determined the nature and amount of drugs appellant had ingested. Appellant's call to 911
inquiring about the effect of mixing pills with alcohol, which resulted in the 911 operator's
decision that the situation was enough of a potential emergency to dispatch the police and EMS,
was sufficient to give Officer Murray the right to make a warrantless entry into appellant's
apartment to investigate. The fact that Officer Murray was uncertain at the suppression hearing
whether the dispatch reported a possible suicide attempt or a possible overdose does not result in
a conclusion that the situation was not an emergency, because either situation is potentially life-threatening. A reasonably prudent law enforcement officer could have concluded that an
emergency was in progress after receiving a 911 dispatch to respond to either an attempted suicide
or a possible overdose. We conclude, therefore, that the initial warrantless entry was justified by
the emergency doctrine.

 Additionally, despite the fact that appellant disclaimed any intention of committing
suicide, the EMS technicians independently concluded, based on the substances appellant reported
ingesting, that the situation warranted transporting appellant to the hospital. Therefore, an
emergency situation was in effect until the EMS personnel determined the full danger of
appellant's condition.

 Finally, Officer Murray testified that the reason she searched through appellant's
personal belongings was to find identification and medication bottles to assist EMS. Appellant
was under the influence of a substantial amount of several different drugs, and it is not difficult
to imagine that, while she may have been able to speak, her answers to questions may not have
been helpful or reliable. Additionally, if appellant was trying to commit suicide and was resisting
treatment, she may not have been telling the truth about the substances she had ingested.

 The trial court was also entitled to believe that EMS truly needed the information
which was the subject of the search in order to properly treat appellant's condition. The search
for appellant's identification and medicine bottles was in direct response to the emergency at hand,
and the search did not exceed the scope of the emergency. The fact that the EMS technicians
were also searching for the medication bottles in various parts of the apartment supports a
conclusion that Officer Murray was not searching as a pretext to discover cocaine.

 Appellant argues that the fact that EMS somehow came into possession of one and
a half Rohypnol tablets and an Erythromycin tablet indicates that it was possible that appellant
voluntarily produced the substances, thereby negating the necessity for the search. Assuming
arguendo that appellant did produce the tablets, the record contains evidence that EMS still wanted
to ascertain, in addition to determining the identity of the medication ingested, how many tablets
appellant had taken. The trial court was entitled to conclude, therefore, that a search for the
medication bottles was still necessary. Thus, the warrantless search was justified by the
emergency doctrine. We conclude the trial court did not abuse its discretion in denying the
motion to suppress and overrule appellant's sole point of error.



CONCLUSION


 Having overruled appellant's sole point of error, we affirm the judgment of
conviction.



 J. Woodfin Jones, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: April 24, 1996

Do Not Publish



ndings are given, the appellate court
presumes the trial court found whatever facts where needed to support the ruling. State v.
Johnson, 896 S.W.2d 277, 280 (Tex. App.Houston [1st Dist.] 1995, pet. granted). 

 In the present case, we believe that the trial court could reasonably have found that
the circumstances Officer Murray testified about reflected an objectively reasonable belief that an
emergency was occurring at the time Officer Murray arrived and continued until the EMS team
determined the nature and amount of drugs appellant had ingested. Appellant's call to 911
inquiring about the effect of mixing pills with alcohol, which resulted in the 911 operator's
decision that the situation was enough of a potential emergency to dispatch the police and EMS,
was sufficient to give Officer Murray the right to make a warrantless entry into appellant's
apartment to investigate. The fact that Officer Murray was uncertain at the suppression hearing
whether the dispatch reported a possible suicide attempt or a possible overdose does not result in
a conclusion that the situation was not an emergency, because either situation is potentially life-threatening. A reasonably prudent law enforcement officer could have concluded that an
emergency was in progress after receiving a 911 dispatch to respond to either an attempted suicide
or a possible overdose. We conclude, therefore, that the initial warrantless entry was justified by
the emergency doctrine.

 Additionally, despite the fact that appellant disclaimed any intention of committing
suicide, the EMS technicians independently concluded, based on the substances appellant reported
ingesting, that the situation warranted transporting appellant to the hospital. Therefore, an
emergency situation was in effect until the EMS personnel determined the full danger of
appellant's condition.

 Finally, Officer Murray testified that the reason she searched through appellant's
personal belongings was to find identification and medication bottles to assist EMS. Appellant
was under the influence of a substantial amount of several different drugs, and it is not difficult
to imagine that, while she may have been able to speak, her answers to questions may not have
been helpful or reliable. Additionally, if appellant was trying to commit suicide and was resisting
treatment, she may not have been telling the truth about the substances she had ingested.

 The trial court was also entitled to believe that EMS truly needed the information
which was the subject of the search in order to properly treat appellant's condition. The search
for appellant's identification and medicine bottles was in direct response to the emergency at hand,
and the search did not exceed the scope of the emergency. The fact that the EMS technicians
were also searching for the medica