

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00070-CR

———————————————————

EDWARD MICHAEL RATLIFF, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Court
Clay County, Texas
Trial Court No. CR-16320

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant's name is Edward Michael Ratliff. The jury convicted him on 49 counts of cruelty to livestock animals. *See* Tex. Penal Code Ann. § 42.09. The information charged "Edward Ratliff," but the evidence at trial was that the animals were on property owned by "Michael Ratliff." At the close of the State's case, Appellant moved for a directed verdict on the basis that no one had identified him in open court and that the State had not produced any evidence to show the "knowledge or mens rea of the Defendant."

Appellant raises two points on appeal. First, he argues that the evidence was insufficient to establish that he was the person charged and that no evidence showed that Edward and Michael were the same person. In his second point, he argues that the trial court erred by denying his directed verdict because the State failed to prove that he had acted intentionally or knowingly. Because we hold that the evidence was sufficient to establish that he was the person charged and the person who committed the offenses and to prove that he acted with the requisite mental state, we will affirm.

### Background

The information charged "Edward Ratliff" with multiple counts of cruelty to livestock animals. A person commits cruelty to livestock animals if the person intentionally or knowingly commits certain acts, including "fail[ing] unreasonably to provide necessary food, water, or care for a livestock animal in the person's custody."

*Id.* § 42.09(a)(2). The information specifically alleged that Appellant had failed to provide livestock animals with food.

In the case style in the trial court, the defendant was named as "Edward Michael Ratliff." Appellant filed an election to have the judge assess punishment; he titled the document, "Defendant[] Edward Michael Ratliff's Election of Punishment."

At voir dire, the trial court told the jury that "[t]he case that is now on trial is the State of Texas versus Edward Michael Ratliff." In voir dire, the prosecutor identified the people in the courtroom, including "Edward Michael Ratliff." After the jury was sworn, the prosecutor read the information, and Appellant stated his plea of not guilty; the information read by the prosecutor charged "Edward Ratliff" with the offenses.

In the State's opening statement, the county attorney concluded by stating, "[W]hen you hear the State's evidence, you will not have a choice but to . . . find Michael—Edward Michael Ratliff—Michael Ratliff guilty." In Appellant's opening statement, his attorney told the jury, "[Y]ou're gonna have to decide whether or not pictures and testimony of people can get in the mind of Michael Ratliff and determine whether or not this was done intentionally and knowingly."

The first witness was Chelsea Boyd, a sergeant with the Clay County Sheriff's patrol division. She identified the defendant, "Mr. Ratfliff":

3

[Prosecutor]. And did you have an occasion to work a case against the Defendant, Mr. Ratliff?

A. Yes.

Q. And is that the Defendant that's sitting right here (indicates)?

A. Yes.

Q. And what was that case?

A. It was cruelty to livestock animals, I believe, and some seizure of some animals.

Boyd stated that on the date on which the animals were seized, she arrived at "Mr. Ratliff's property" to assist other officers. When she arrived, she found "[q]uite a few cows, some horses, that were malnourished." She explained the condition of some of the animals, describing them as looking emaciated, and she stated that a search of the entire property revealed no hay on the premises. Boyd described the property as "very bare," with "little to no grass," "no leaves on the trees," and "no feed at all." Boyd took pictures of the animals that were found on the property, and those pictures were admitted at trial.

Boyd was also asked about how she had identified the owner of the property on which the animals had been found:

Q. Okay. And did you determine the owner to be Michael Ratliff?

A. Yes.

Q. And how did you determine that?

A. I believe whenever we did a search of the coordinates that we were given, the property came back to him.

4

Q. Okay. Did you or anyone else have any conversations with Mr. Ratliff?

A. This day?

Q. Well, this day or in this investigation, I'm just trying to clear that up.

A. I served the initial, I believe, it was a felony warrant and the search warrant at his residence.

Q. Okay. And did [he] acknowledge that he was the owner, act surprised, say anything?

A. As far as I can remember he acknowledged that that was his property.

Q. Okay. So as far as you know that's—the ownership of the property has never been an issue in this case; is that correct?

A. That's correct.

Boyd further testified that she did not know "what Mr. Ratliff intended" with respect to the animals and that all she knew was that the animals had been found on his property.

Dr. Kiersten Hartrim, a veterinarian, and Sharon Adkins, a licensed animal cruelty investigator who runs a nonprofit related to investigating animal cruelty, both testified that "Mr. Ratliff" was at a prior hearing related to the seizure of the animals. *See* Tex. Health & Safety Code Ann. § 821.022–.023 (setting out hearing procedure for seizure and disposition of cruelly treated animals). Both witnesses also discussed the state of the seized animals.

Adkins testified that she became involved in the case after receiving a call from the sheriff's office. Adkins arrived at the property around 8:30 p.m. and first secured animals that were out on the road due to "very, very poor" fencing. After that, she and others began securing animals on the property. Fifty animals were seized. She stated that her organization had spent over $150,000 providing care to the animals. She described the property; "the fencing [was]—I could walk through the fencing without any problems, very barren, no food source at all of any kind." The native foliage "was down to the dirt."

Adkins also took pictures of animals seized from the property, and she testified about the animals in those pictures, including a cow that was "just starved . . . and in very poor condition" and two cows and a horse that died after being removed from Appellant's property. In total, sixteen of the seized animals had died since being removed from the property. In Adkins's opinion, had the animals remained on "Mr. Ratliff's property," a majority or all of the animals would have died.

In Dr. Hartrim's testimony, she explained how she had been involved in this case "with Michael Ratliff." Her first involvement came when Adkins brought her an emaciated cow and some horses. Dr. Hartrim visited the other animals a week or so after they had been brought to Adkins's property. When Dr. Hartrim saw them, she was "surprised [that] some of them were still alive." She attributed the death of the sixteen that had died to "[s]evere neglect for an extended period of time." She described some of the animals as "[a]larmingly underweight." Like Adkins, she went

6

through the pictures that Adkins had taken and discussed the condition of the animals in the pictures. She further stated that in her opinion, the animals were underfed and that their level of emaciation could not be explained by something like exposure to extreme temperatures.

After the State rested and closed, Appellant moved for a directed verdict on two grounds: (1) that the State had not produced any evidence that Appellant had acted intentionally or knowingly and (2) that "no one from the witness stand [had] identified the Defendant in open court." Defense counsel said,

> No one in open court identified the—the Defendant, Mr. Ratliff, at the table by virtue of where he sat, virtue of who he was, and there was no judicial acknowledg[ment] that the record so reflect. The only reference that—in my notes that I could find was the first witness that said, yes, she had some interactions with the Defendant, Mr. Ratliff. But it's my position that he wasn't identified in open court and that is definitely an element of the Defense, Your Honor, and the State has not met their burden on that.

After the trial court and the county attorney responded that Deputy Boyd had identified Appellant, his attorney replied, "[S]he did not point him out by an identifying—we're both in suits. She did not—you know, for the Court of Appeals, she did not identify Mr. Ratliff by person. She just named—she said Defendant." The trial court denied the motion "[b]ased on the fact that Deputy Boyd did, in fact, point him out."

The trial court's charge to the jury instructed that "[t]he defendant, Edward Michael Ratliff, stands charged with the offense of 49 counts of cruelty to livestock

7

animals." After the jury found Appellant guilty on all counts, the trial court sentenced him to 180 days' confinement in the county jail and a $2,000 fine. In the trial court's judgment, the defendant was identified as "Edward Michael Ratliff."

## Discussion

### I. Appellant's Identity

In his first point, Appellant argues that the evidence was insufficient to prove that he was (1) the person named in the information and (2) the person who committed the charged offense. He asserts that the State's evidence failed to prove that the individual in the courtroom was Michael Ratliff, Edward Ratliff, or Edward Michael Ratliff.[1]

#### A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility.

---

[1]During the punishment phase, Appellant testified, and his attorney acknowledged that Appellant goes by "Michael." However, we do not consider what happened in the punishment stage when deciding the sufficiency of the evidence to support Appellant's guilt. *See Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001). Appellant's testimony during the punishment stage also revealed that he is an attorney who practices bankruptcy law. State Bar of Texas website lists an attorney named Edward Michael "Mike" Ratliff who practices bankruptcy law.

*See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

**B. Analysis**

Appellant's brief argues that the person who was arraigned in the presence of the jury and who entered a plea of "not guilty" was Edward Ratliff, but the evidence relevant to proving who committed the offense related to Michael Ratliff, and there was no in-court identification of Edward Ratliff as the defendant. He contends that there was no evidence from which the jury could conclude that Michael Ratliff and Edward Ratliff were the same person or that the individual in the courtroom was the individual who committed the alleged offenses. We agree with the State that the evidence was sufficient to prove that Appellant was the person named in the State's information and the person who committed the charged offense.

9

"[T]he State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *see also Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018). Here, the evidence was sufficient to show that Appellant's name was Edward Michael Ratliff, that he goes by the name Michael, and that he was the person who committed the charged offenses.

Regarding whether Appellant was "Edward" or "Michael" or "Edward Michael," the trial court clerk's case summary indicates that he was arraigned on April 25, 2023. We have no record of the arraignment, and nothing else in the record indicates that he objected there that he was not Edward Ratliff. He subsequently filed a "Written Waiver of Arraignment and Letter of Representation" in which he stated that "the Defendant's name is spelled correctly in the Indictment of this Cause." He cannot now argue on appeal that he is not Edward.[2] *See* Tex. Code Crim. Proc. Ann. arts 1.14(b) (stating that if a defendant "does not object to a defect, error, or irregularity of form or substance in an indictment or information" before the trial date, the defendant "waives and forfeits the right to object to the defect, error, or irregularity and . . . may not raise the objection on appeal or in any other

---

[2]It is unclear how the style of the case came to name "Edward Michael Ratliff" when the information charged "Edward Ratliff." There were multiple pretrial hearings in this case, but we do not have a transcript from them, so we cannot tell if the style was amended at one of those hearings. However, in his written waiver of arraignment, he referred to himself as "Michael Ratliff."

postconviction proceeding"); 21.07 (providing that when a person is known by two or more names, it is sufficient to state either name in the charging instrument); *see also Jackson v. State*, Nos. 05-01-01840-CR, 05-01-01841-CR, 2002 WL 31656102, at *2 (Tex. App.—Dallas Nov. 26, 2002, no pet.) (not designated for publication) (discussing Tex. Code Crim. Proc. Ann. arts. 26.07 and 26.08 and stating that "if an indictment contains an error in the defendant's name, it is the defendant's duty to call this error to the attention of the trial court at the time of arraignment," and if the defendant fails to do so, "he has waived the error and cannot later use it as a defense"). He also did not object that his name was not "Edward Ratliff" at trial when the information was read and he entered his plea before the jury, and he was thus identified to the jury as Edward.

Deputy Boyd testified that Appellant was the person against whom she had worked the case. Appellant argued with respect to his directed-verdict ground that "[n]o one in open court identified the—the Defendant, Mr. Ratliff, at the table by virtue of where he sat, virtue of who he was, and there was no judicial acknowledge that the record so reflect." However, although the procedure that Appellant's attorney described—ensuring that the record reflects that the person identified in open court is the defendant—is the better practice and strongly encouraged, it is not required. *See Rohlfing v. State*, 612 S.W.2d 598, 601 & n.2 (Tex. Crim. App. 1981) (stating that "[a]bsent any indication, prior to appeal, that the jury may have been misled by the in-court identification procedure, we will not presume that some person other than

11

appellant may have been identified and that the jury nonetheless chose willfully to convict appellant without evidence that he was the sole perpetrator of this offense").

Appellant argues, however, that no evidence at trial tied him to the name "Michael," yet the testimony was that "Michael" owned the property, and the jury had no evidence to determine that he and "Michael" were the same person. However, in addition to Appellant's attorney referring to him as "Michael" during opening statements, the jury could reasonably infer from Deputy Boyd's testimony that Appellant went by the name "Michael."

The record reflects that Deputy Boyd answered affirmatively when asked if she had worked a case against "the Defendant, Mr. Ratliff." The prosecutor then asked her if that person was "the Defendant [who is] sitting right here" and indicated to someone in the courtroom. Deputy Boyd answered, "Yes." Appellant did not object that the prosecutor had not indicated Appellant or that Deputy Boyd had identified another person rather than himself. *See id.* at 601. He does not argue on appeal that Deputy Boyd identified another person, and Appellant was the only person on trial. *See id.* And in ruling on Appellant's directed-verdict ground, the trial court stated that Deputy Boyd had identified Appellant for the jury, thereby making the record reflect that she had identified Appellant. Thus, Appellant was identified by Deputy Boyd as the person against whom she had worked the case.

Deputy Boyd further testified that a property search had revealed that the property belonged to "Michael Ratliff." The jury thus had Deputy Boyd's testimony

that Michael Ratliff had been determined to be the property's owner; that she had worked the case against "the Defendant, Mr. Ratliff"; that Appellant was that defendant; and that to her recollection, when she served the warrant, "Mr. Ratliff" acknowledged "that that was his property." Adkins and Dr. Hartrim stated that "Mr. Ratliff" had been at the seizure hearing for the animals seized from the property. And when looking at a picture of a longhorn carcass on the property, Adkins stated that the carcass was "on the Ratliff property." In all the testimony discussing "Mr. Ratliff" or "Michael Ratliff," there was never any indication that any of the witnesses were referring to any person other than Appellant.

Further, when Deputy Boyd stated that the property at issue belonged to "Michael Ratliff," the context of her testimony indicated that she was referring to the defendant of the case on which she had worked and about which she was testifying. She first stated that she had worked the case against the defendant, and she then identified him for the jury. She then testified, in order: that the case was cruelty to livestock animals; that she had "come to be on Mr. Ratliff's property" on the day of the seizure after being sent there by a supervisor; that when she arrived, she found malnourished animals; that the property was in Clay County and was over 100 acres; that the property had little vegetation; and that the owner of the property had been determined to be Michael Ratliff. She then said that she had served a warrant at the residence of "Mr. Ratliff"; that to her recollection, he had acknowledged that the property at issue was his; and that to her knowledge, ownership of the property had

13

never been an issue in the case. That is, the jury had Deputy Boyd's testimony that Michael Ratliff was the owner of the property on which the animals had been found and had not contested his ownership; that the case she had worked was against "the Defendant, Mr. Ratliff"; and that Appellant was that defendant. As noted, nothing in her testimony ever indicated that her reference to "Michael Ratliff" was a reference to anyone other than Appellant. Considering her testimony as a whole, the jury could reasonably infer that Appellant, the person against whom Deputy Boyd had worked the case, and "Michael Ratliff" were all the same person.[3] Further, as discussed below, the jury heard evidence from which it could have determined that Appellant appeared at the seizure hearing as the animals' owner.

Accepting the jury's determinations regarding credibility and the weight of the evidence and viewing all the evidence in the light most favorable to the verdict, the jury could have found beyond a reasonable doubt that Appellant was the person who had been charged and who had committed the charged offenses. We overrule Appellant's first point.

---

[3]Dr. Hartrim also referred to "Michael" when explaining at the start of her testimony how she became involved "with this case . . . with Michael Ratliff," and nothing in her testimony suggested that she was referring to anyone but Appellant. We further note that at no point did Appellant object that his middle name was not Michael even though during voir dire, the defendant was identified for the jury as "Edward Michael Ratliff." The jury charge also used that name. Nothing in the trial evidence suggested that anyone but Appellant had ever been implicated in the case.

## II. Appellant's Mental State

In his second point, Appellant argues that the trial court erred by denying his directed verdict motion because there was no testimony regarding his mental state. He contends that the testimony was that his intent was unknown, and there was no indication that he even knew the animals were on or near his property or knew of their condition. Further, mirroring his first point arguments, he asserts that while "testimony supports the conclusion that Michael Ratliff may be the owner of the land," "there was no evidence or testimony that Edward Ratliff had recently been to the property." He further asserts that Michael Ratliff's residence was not located on the same property from which the animals were seized, and "[t]here was no evidence from a witness who observed Mr. Ratliff on the property" and "no evidence [that] Mr. Ratliff purchased or bred the animals."

### A. Standard of Review

An issue complaining about a trial court's denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Sutton v. State*, 328 S.W.3d 73, 75 (Tex. App.—Fort Worth 2010, no pet.). Thus, we apply the legal sufficiency standard in analyzing Appellant's point.

### B. Analysis

The State does not have to provide direct evidence of intent or knowledge; rather, intent and knowledge may be inferred from any facts that tend to prove their

15

existence. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Pine v. State*, 889 S.W.2d 625, 629 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (stating that "[k]nowledge and intent may be inferred from the conduct of, remarks by, and circumstances surrounding the acts engaged in by the defendant" and concluding that "when the charged offense is cruelty to animals, knowledge and intent may be inferred from the circumstances surrounding the offense").

The jury had evidence that Appellant owned or had custody of the animals. We have already held that Deputy Boyd's testimony regarding "Mr. Ratliff" and "Michael Ratliff" was sufficient for the jury to find that she was referring to Appellant, and her testimony was thus evidence that the property on which the animals had been found belonged to Appellant. Deputy Boyd further stated that in her recollection, Appellant had acknowledged that the property was his.

Moreover, two witnesses testified that Appellant had attended the seizure hearing for the animals. Adkins testified that at a seizure hearing, there are limited options for what could happen to seized animals: they can be euthanized, be given to a nonprofit, be auctioned, or be returned to their owner. When asked about the process on cross-examination, she gave the same options, except instead of stating generally that seized animals can be returned to their owner, her testimony was the more specific statement that in this case, the animals could have "went to" Appellant, their owner. And when looking at a picture of a longhorn carcass on the property, Adkins stated that the carcass was "on the Ratliff property." From the totality of the

16

evidence and the reasonable inferences derived therefrom, the jury could have found beyond a reasonable doubt that Appellant owned the animals on his property.

Aside from that evidence, Adkins stated that although it is not unusual to find animal bones on a 160-acre tract, she saw "an inordinate amount of bones" on the property. Adkins further testified about the longhorn carcass, describing it as "pretty much petrified" and opining from its condition that it had "been dead for quite some time." Her testimony is evidence that livestock animals had been on Appellant's property for some time, and that the jury could consider this testimony as evidence that Appellant would have known that the animals were on his property.

Deputy Boyd, Adkins, and Dr. Hartrim all testified that the property was almost bare, with little to no grass or leaves on the trees. Adkins testified that the property did not look like it had been properly managed and that if it had been, grass on the land would have been enough for the animals. Deputy Boyd and Adkins testified that there was no hay on the property for the animals. Adkins and Dr. Hartrim testified about the poor condition of the animals, and Dr. Hartrim stated that the animals' condition could not have come from mere exposure to extreme elements. Adkins testified that the animals would not have been in the condition in which they were found if they had been properly fed and that in her opinion, if the animals had remained on Appellant's property, most of them would have died.

From this evidence, the jury could have found beyond a reasonable doubt that Appellant had intentionally or knowingly "fail[ed] unreasonably to provide necessary

17

food, water, or care" for the livestock animals in his care. *See* Tex. Penal Code Ann. § 42.09(a)(2); *Pine*, 889 S.W.2d at 629. We overrule Appellant's second point.

## Conclusion

Having overruled Appellant's two points, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 27, 2025