In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00023-CR


______________________________




TERRANCE MOUTON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


 Hunt County, Texas


Trial Court No. CR0701430




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 In the jury trial of Terrance Mouton for cruelty to an animal, (1) the admitted evidence included
nearly thirty 8[1]/2" x 11" photographs (each dated June 6, 2007) depicting several different dogs in
varying states of apparent distress. After Mouton was convicted, the trial court assessed punishment
at one year's confinement in the Hunt County Jail. Mouton now raises several points of error (some
of which are multifarious). (2) We affirm the trial court's judgment, because (1) the evidence is legally
sufficient to support the judgment, and (2) ineffective assistance of counsel has not been shown.

(1) The Evidence Is Legally Sufficient to Support the Judgment

 In three points of error, Mouton contends (a) the trial court erred by denying his motion for
new trial because the evidence is legally insufficient, (b) the trial court erred by denying his motion
for a directed verdict, and (c) the evidence is legally insufficient to support the jury's finding of guilt. (3) 
 All three of those points of error attack the legal sufficiency of the evidence. "A motion for
a directed verdict of acquittal is a challenge to the legal sufficiency of the evidence; if such a
challenge is sustained, it results in the immediate dismissal of the charges against the accused." 
Todd, 242 S.W.3d at 136 (citing Yarborough, 178 S.W.3d at 903); see also Rice, 195 S.W.3d at 879. 
"We treat a point of error complaining about a trial court's failure to grant a motion for directed
verdict as a challenge to the legal sufficiency of the evidence." Williams v. State, 937 S.W.2d 479,
482 (Tex. Crim. App. 1996) (citing Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993)).

 "When examining the legal sufficiency of the evidence, appellate courts view the evidence
in the light most favorable to the verdict. If a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt, then the evidence is legally sufficient." Bigon v.
State, 252 S.W.3d 360, 366 (Tex. Crim. App. 2008) (citing Poindexter v. State, 153 S.W.3d 402, 405
(Tex. Crim. App. 2005)); see also Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). Evidentiary
sufficiency  must  be  measured  against  the  hypothetically  correct  jury  charge.  Wooley  v.  State,
No. PD-0861-07, 2008 WL 2512843, at *1 (Tex. Crim. App. June 25, 2008, no pet.) (mem. op., not
designated for publication). The hypothetically correct jury charge is one that "accurately
promulgates the law, is authorized by the indictment [or trial information], does not unnecessarily
increase the State's burden of proof or restrict the State's theories of liability, and adequately
describes the particular offense for which the defendant was tried." Grotti v. State, No. PD-134-07,
2008 WL 2512832, at *5 (Tex. Crim. App. June 25, 2008) (citing Malik v. State, 953 S.W.2d 234,
240 (Tex. Crim. App. 1997)).

 The State's amended trial information alleged Mouton "did . . . intentionally and knowingly
fail unreasonably to provide necessary food, care and shelter for an animal to-wit: a light colored
dog in the defendant's care and custody." 

 Section 42.09 of the Texas Penal Code, as applicable at the time of trial, provided, in
pertinent part,

 (a) A person commits an offense if the person intentionally or knowingly . . . 


 . . . .


 (2) fails unreasonably to provide necessary food, care, or shelter for an animal
in the person's custody . . . .


 . . . .


 (c) For purposes of this section:

 (1)"Abandon" includes abandoning an animal in the person's custody without
making reasonable arrangements for assumption of custody by another
person.

 (2)"Animal" means a domesticated living creature and wild living creature
previously captured. "Animal" does not include an uncaptured wild creature
or a wild creature whose capture was accomplished by conduct at issue under
this section.

 (3) "Cruel manner" includes a manner that causes or permits unjustified or
unwarranted pain or suffering.

 (4)"Custody" includes responsibility for the health, safety, and welfare of an
animal subject to the person's care and control, regardless of ownership of the
animal.

 (5)"Necessary food, care, or shelter" includes food, care, or shelter provided
to the extent required to maintain the animal in a state of good health.

 

Act of May 24, 2001, 77th Leg., R.S., ch. 450, § 1, 2001 Tex. Gen. Laws 887, 887-88.

 The hypothetically correct jury charge would, in this case, authorize Mouton's conviction if
the State presented legally sufficient evidence that he (a) failed to provide (b) necessary food, care,
or shelter (c) to a dog (d) that had been in Mouton's custody (e) at the time in question.

 The State's evidence consisted of testimony and photographs. Of the nearly thirty 8[1]/2" x 11"
photographs of the dogs, the rib cage of the dog shown in Exhibits 1-9 is distinctly visible. This dog
also has one open and bleeding wound on its back near the right shoulder. The animal is chained
to an oil drum and has access only to green, algae-infested water. The only visible food within reach
of the dog's chain is some kibble scattered on the ground near the animal. (Subsequent testimony
would reveal this food had been placed there by one of the investigating officers after they arrived
at the scene and shortly before the pictures were taken.) The other animals pictured in the State's
photographs show similar open wounds on their noses, legs, and back. (4)

 Wayne "Doc" Pierce, (5) a constable for Precinct 2 in Hunt County, testified that, on June 6,
2007, he and two other officers went to a house being leased by Mouton. Constable Pierce found
twelve canines at the premises: three puppies and nine adults. The constable said he found no food
or food bowls available for the dogs. Continuing, he said, "There was very little water in some of
the little dishes like a hub cap or tub, and that water was, in my opinion, stagnant." The constable
described the animals as being "in a condition of poor nourishment." "Most of the animals had open
wounds" and their "[r]ib cages were visible on some of the dogs." Constable Pierce also later talked
with Mouton, who admitted that he owned these animals. 

 Terry  Jones,  an  investigator  with  Hunt  County's  Environmental  Office,  saw  the  dogs
June 6, 2007. The animals were malnourished, without food or fresh drinking water, and had open
sores. According to Jones, the dog pictured in State's Exhibit 1 needed medical attention both for
its wounds and for its malnourished state. When one of the other officers found some dog food
inside a trash bin and spread it on the ground for the dogs to eat, those animals that were not
otherwise afraid of these "strangers'" presence immediately began gorging themselves as if they had
not eaten in quite some time. 

 There was also testimony from Mike Pierce, a certified peace officer employed with the Hunt
County Environmental Enforcement Office. (6) Officer Pierce told the jury that, on June 6, 2007, he
accompanied the other officers to property being rented by Mouton. Officer Pierce described the
water that had been left for the dogs as stale and having a "green, algae-type mold" that was the color
of antifreeze. None of the animals had any food within their reach. Officer Pierce also opined that
"they hadn't eaten in some time." Based on the dogs' behavior and appearance, Officer Pierce
concluded these animals were starving and needed fresh drinking water. 

 Finally, Art Munoz, Jr., a certified peace officer and an animal cruelty investigator for the
Society for the Prevention of Cruelty to Animals, testified on the State's behalf. Munoz went to the
location at issue in this case June 6, 2007. The dogs, which Munoz identified as pit bulls, appeared
dirty and scarred. The only available water was stagnant and algae-filled. Munoz noticed that one
of the dogs was extremely malnourished. He described that dog as having a recent wound on its
back, which had become infected. While the record is unclear as to which animal Munoz is
specifically referring, his testimony would be consistent with the appearance of the dog pictured in
State's Exhibits 1-9.

 We believe a reasonable jury could have found the State met its burden of proof, as measured
by the elements set forth in the hypothetically correct jury charge, beyond a reasonable doubt. The
evidence showed Mouton failed to provide necessary food and medical care to at least one dog that
had been in his custody. Therefore, the trial court did not err in denying Mouton's motion for a
directed verdict or in denying the motion for new trial to the extent that both motions challenged
evidentiary sufficiency. Cf. Martinez v. State, 48 S.W.3d 273, 275 (Tex. App.--San Antonio 2001,
pet. ref'd) (animal cruelty investigator testified that distinct visibility of dog's vertebrae along spine
and severe tuck in abdominal wall are indicators of malnourishment; evidence legally sufficient). 
 We overrule these points of error.

(2) Ineffective Assistance of Counsel Has Not Been Shown

 Mouton also claims he received ineffective assistance of counsel in two respects: (a) a key
witness was not subpoenaed and a continuance was not sought to secure that witness' testimony, and
(b) counsel allowed Mouton to testify in narrative form during the punishment phase. Ineffective
assistance of counsel has not been shown.

 The standard for testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668 (1984). See also Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim.
App. 1986). To prevail, an appellant must prove by a preponderance of the evidence (1) that
counsel's representation fell below an objective standard of reasonableness and (2) that this deficient
performance prejudiced the defense. Strickland, 466 U.S. 668; Rosales v. State, 4 S.W.3d 228, 231
(Tex. Crim. App. 1999). Under this standard, a claimant must demonstrate that counsel's
representation so undermined the proper functioning of the adversarial process that the trial cannot
be relied on as having produced a just result. Strickland, 466 U.S. at 686.

 Our review of counsel's representation is highly deferential, and we indulge a strong
presumption that counsel's conduct falls within a wide range of reasonable representation. Id. at 689;
Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). This Court will not second-guess
through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have
pursued a different course support a finding of ineffectiveness on direct appeal. Blott v. State, 588
S.W.2d 588, 592 (Tex. Crim. App. 1979); Harner v. State, 997 S.W.2d 695, 704 (Tex.
App.--Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness. Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

 When ineffective assistance is raised on direct appeal, appellate counsel and the court must
proceed on a trial record not developed for the object of litigating or preserving the claim and thus
often incomplete or inadequate for this purpose. Massaro v. United States, 538 U.S. 500, 504-05
(2003); Freeman v. State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003). Nevertheless, there are rare
cases where "trial counsel's ineffectiveness is so apparent from the record" that the inherent need for
reversal is obvious. Massaro, 538 U.S. at 508; Freeman, 125 S.W.3d at 507.

 Mouton's first argument that he was not provided effective assistance of counsel relates to
a potential witness who was not called. On the eve of trial, "a material witness named Quaneal
Anthony" was purportedly discovered, but trial counsel neither subpoenaed Anthony, nor moved for
a continuance to secure his testimony. Mouton contends the outcome of his case would have been
different had Anthony been called to testify at trial. 

 Mouton's trial counsel did not testify at the hearing on the motion for new trial. Therefore,
we have no explanation from Mouton's trial counsel as to why Anthony was not subpoenaed to
testify in Mouton's defense. In cases where the record is silent as to trial counsel's alleged failures,
a claim of ineffective assistance will generally fail to meet the high burden of rebutting the appellate
presumption that trial counsel's conduct fell within the wide range of professional norms. Thompson,
9 S.W.3d at 814. This is such a case.

 Instead of calling his trial counsel to testify and explain why Anthony was not called as a
witness--and thereby provide this Court with a record on which to assess counsel's trial
strategy--Mouton called Anthony to testify at the hearing on the motion for new trial. Anthony told
the trial court that he had been hired by Mouton to take care of Mouton's twelve dogs during the
period before authorities found the animals in an emaciated and neglected state. Anthony testified
that he had been taking care of the animals for "[f]our or five or six [months] before the incident. 
." Shortly before the date when police intervened to find the neglected animals, Anthony had been
arrested and incarcerated in the Rockwall County Jail for possession of marihuana. Anthony said
his incarceration prevented him from being able to care for the animals, which reportedly resulted
in the state of neglect in which they were found by authorities.

 On cross-examination, it was revealed that Anthony had been previously convicted and
imprisoned for robbing a United States Postal Service employee, had been found guilty of aggravated
assault with a deadly weapon, and had been sentenced to eight years' confinement for robbery. 

 It is possible that Mouton's trial counsel considered calling Anthony to testify in Mouton's
defense, but instead made the strategic decision not to do so based on Anthony's criminal history. 
See Tex. R. Evid. 609(a) (permitting impeachment of witness with evidence of felony criminal
conviction). A reasonable trial strategy might be to avoid allowing the jury to associate Mouton with
a convicted felon, especially given the fact that Mouton himself had spent time in prison for
narcotics trafficking. Therefore, because we can imagine a strategic reason for Mouton's trial
counsel to not call Anthony as a defense witness, the record before us will not support Mouton's
claim that counsel provided ineffective assistance during the guilt/innocence phase.

 Mouton's second allegation about ineffective assistance of counsel contends his trial counsel
improvidently "allowed the Appellant to speak freely to the [trial] Court . . . [and] did not engage
Appellant in a question and answer dialog normal to such proceedings." According to Mouton, this
unfortunate decision allowed Mouton to make a statement that essentially invited the trial court to
assess Mouton's punishment at the maximum sentence--one year in the county jail--which the trial
court did impose. 

 We similarly conclude the record does not support the claim that Mouton's trial counsel was
ineffective during punishment. As we have noted, Mouton's trial counsel was not called to testify
at the hearing on the motion for new trial. Nothing in the record suggests why trial counsel permitted
Mouton "to speak freely" with the trial court during the punishment phase of trial.

 While we have no record explanation as to trial counsel's strategy during punishment, one
could reasonably imagine that Mouton's trial counsel had attempted to dissuade his client from
addressing the trial court during punishment. Sometimes, standing mute is the best course of action. 
But an attorney can only advise the client on the best course of action. In the end, the decision of
whether to address the trial court in one's own defense rests with the accused, not the accused's
attorney.

 A defendant has an absolute, constitutional right "to take the witness stand and to testify in
his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987). "The necessary ingredients of
the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process
of law include a right to be heard and to offer testimony . . . ." Id. at 51. "The right to testify is also
found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right
to call 'witnesses in his favor,' a right that is guaranteed by the criminal courts of the States by the
Fourteenth Amendment." Id. at 52 (referencing and quoting Washington v. Texas, 388 U.S. 14,
17-19 (1967)). "There is no justification today for a rule that denies an accused the opportunity to
offer his own testimony." Id. (concluding that old common-law rule, which forbade criminal
defendants from testifying due to their personal interest in trial's outcome, is irrational under our
constitutional scheme). "The opportunity to testify is also a necessary corollary to the Fifth
Amendment's guarantee against compelled testimony." Id. (citing Harris v. New York, 401 U.S. 222,
230 (1971)).

 In  prompting  the  colloquy  from  the  accused,  Mouton's  trial  counsel  asked  his  client,
"Mr. Mouton, tell the Judge what you - - what you told me what you would request. . . . Tell him
what your feelings are about probation and jail time and those kind[s] of things." This passage
suggests, at least to us, that Mouton had insisted on making a statement to the trial court, and,
perhaps, had done so against the advice of counsel. Whether such was the case, we cannot agree that
trial counsel provided ineffective assistance during the punishment phase of trial for allowing
Mouton to exercise his constitutional right to address the trial court.

 Also, attorney and client might have concluded that such form of testimony might provide
better prospects for a sympathetic hearing by the trial court. But, of course, hindsight is twenty-twenty.

 The record before us does not support Mouton's claims of ineffective assistance.

 The State presented legally sufficient evidence to support the jury's verdict. The appellate
record contains no explanation from Mouton's trial counsel about his trial strategy at either
guilt/innocence or punishment in this case, and we can imagine reasonable explanations to answer 




Mouton's claims of ineffective assistance. Accordingly, for the reasons stated, we overrule Mouton's
various points of error and affirm the trial court's judgment. 



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 25, 2008

Date Decided: October 28, 2008


Do Not Publish



1. See Act of May 24, 2001, 77th Leg., R.S., ch. 450, § 1, 2001 Tex. Gen. Laws 887, 887-88
(current version at Tex. Penal Code Ann. § 42.09 (Vernon Supp. 2008)).
2. A multifarious issue is one that raises more than one specific ground of error. In re S.K.A.,
236 S.W.3d 875, 894 (Tex. App.--Texarkana 2007, pet. denied). We have repeatedly warned
litigants to refrain from raising multifarious points of error. See, e.g., In re Guardianship of Moon,
216 S.W.3d 506, 508 (Tex. App.--Texarkana 2007, no pet.); Newby v. State, 169 S.W.3d 413, 414
(Tex. App.--Texarkana 2005, pet. ref'd). Failure to heed our warnings runs the risk of having any
multifarious issue(s) being summarily overruled. Newby, 169 S.W.3d at 414; Harris v. State, 133
S.W.3d 760, 764 n.3 (Tex. App.--Texarkana 2004, pet. ref'd); Parra v. State, 935 S.W.3d 862, 875
(Tex. App.--Texarkana 1996, pet. ref'd). In the interest of addressing substantive issues, we will
not take the opportunity in this case to overrule any of Mouton's issues on the basis of them being
multifarious.
3. In still another point of error, Mouton contends "[t]he trial court erred in denying Appellant's
Motion for Directed Verdict because the evidence is factually insufficient to support the jury's
verdict."

 A motion for a directed verdict is a challenge to the legal sufficiency of the evidence. Todd
v. State, 242 S.W.3d 126, 136 (Tex. App.--Texarkana 2007, pet. ref'd); Rice v. State, 195 S.W.3d
876, 879 (Tex. App.--Dallas 2006, pet. ref'd); Yarborough v. State, 178 S.W.3d 895, 903 (Tex.
App.--Texarkana 2005, pet. ref'd). A motion for a directed verdict is not a proper mechanism
through which to challenge the factual sufficiency of the evidence. If a trial court were to supplant
the jury's role as final arbiter of witness credibility and grant a directed verdict for factual
insufficiency, such a ruling would constitute a clear abuse of discretion.

 Because a motion for a directed verdict does not permit a trial court to order a judgment of
acquittal based on factual (as opposed to legal) insufficiency, this point of error lacks any basis in
law. We overrule it.
4. We note, however, that some of these other canines appear to have been better fed than the
first canine described above. 
5. To distinguish him from another witness who shares the same last name, we refer to this
witness either as"Doc Pierce" or as "Constable Pierce" (the latter being in accordance with his job
title).
6. To distinguish Mike Pierce from "Constable Pierce," we will refer to the former either as
"Mike Pierce" or as "Officer Pierce" (the latter being in accordance with his job title).



 font-size:11.0pt;
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;}











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00194-CR

                                                ______________________________

 

 

                         CHRISTOPHER RAY FITZGERALD,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 124th
Judicial District Court

                                                             Gregg County, Texas

                                                           Trial
Court No. 38207B

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Christopher
Ray Fitzgerald appeals from his convictions by the trial court on three charges
of aggravated robbery.  Fitzgerald has
filed a single brief, in which he raises an issue common to all of his
appeals.  He argues that the trial court
committed reversible error in denying his motion to sever his case from that of
John Scott Kincaid, Fitzgeralds cohort who was present during the commission
of each aggravated robbery.  

            We
addressed this issue in detail in our opinion of this date on Fitzgeralds
appeal in cause number 06-09-00193-CR. 
For the reasons stated therein, we likewise conclude that error has not
been shown in this case.

            We
affirm the trial courts judgment.

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June
1, 2010

Date Decided:             June
2, 2010

 

Do Not Publish