Andrea **MARTINEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–99–00771–CR.

Court of Appeals of Texas, San Antonio.

March 21, 2001.

Rehearing Overruled April 18, 2001.

persons with no knowledge of his protected activity. *See Marsaglia*, 22 S.W.3d at 5.

Gabe Quintanilla, Law Office of Gabe Quintanilla, San Antonio, for Appellant.

Kevin P. Yeary, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, and SARAH B. DUNCAN, Justice (concurring in the judgment only).

## OPINION

TOM RICKHOFF, Justice.

This appeal requires us to review a sad case. We reach this legal result with some discomfort. As appellate judges we cannot apply our own philosophy of justice, but may only apply the law to the facts of a particular case. After doing so here, we must affirm.

Appellant Andrea Martinez, an eighty-three year old widow, is known in her neighborhood for taking in homeless animals. She was charged with cruelty to animals, and convicted by a jury. *See* TEX.PEN CODE ANN. § 42.09(a)(2) (Vernon Supp.2000). The trial court assessed punishment at one year confinement and fined Martinez one thousand dollars. The trial court probated the sentence and the fine for two years on the condition that Martinez perform one hundred hours of community service at a local animal shelter. Martinez raises five appellate issues.

### Sufficiency of the Evidence

■ In two issues, Martinez challenges the sufficiency of the evidence supporting her conviction. Specifically, Martinez argues that the evidence is legally and factually insufficient to prove she "intentionally or knowingly" withheld care for the animal she called "Lobo." To review a challenge about the legal sufficiency of the evidence, the court of appeals reviews the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mosley v. State*, 983 S.W.2d 249, 254–255 (Tex.Crim.App.1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). In conducting this review, the jury serves as the exclusive judge of the credibility of witnesses and of the weight to be given their testimony; therefore, reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Mosley*, 983 S.W.2d at 254–255. In a factual sufficiency challenge, the reviewing court reviews all evidence *without* the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). After applying these standards here, we find that the evidence is legally and factually sufficient to support the verdict.

Martinez was charged with intentionally and knowingly "fail[ing] unreasonably to provide necessary food, care, or shelter for an animal in [her] custody." *See* TEX. PEN. CODE ANN. § 42.09(a)(2) (Vernon Supp. 2000). To prove this allegation, the State presented the testimony of Rudy Davila, an animal cruelty investigator for the City of San Antonio. Davila explained that he was asked to investigate a complaint of animal cruelty involving a dog being kept at Martinez's home. Davila testified that upon arriving at Martinez's home, he observed several dogs in the back yard, one of which was separated from the others. Davila stated that most of the dogs appeared healthy, but the separated dog was lethargic, non-responsive, and suffering from a severe skin condition. Davila described the dog as having very little hair and open wounds. Davila explained that he could not determine the dog's skin color because its skin was completely crusted-over. Davila further testified that the dog appeared malnourished, explaining that the dog's back vertebrae were distinctly visible and the dog's abdominal wall had a severe tuck. Davila identified the infected dog in several photographs that were admitted into evidence.

Davila explained that he questioned Martinez about the dog's condition. According to Davila, Martinez told him a friend gave her the dog two years before after trying to cure the dog's skin condition with flea powder. When questioned about Martinez's demeanor, Davila indicated that Martinez did not appear upset or worried about the dog. Davila opined that the dog had not received reasonable care, noting the dog did not appear to have been treated for parasitic sarcoptic mange. Davila explained that he did not smell sulfur on the dog, a scent that would indicate the dog was being treated. Davila stated he decided to seize the dog due to the severity of the dog's condition. He explained how Martinez signed a consent form, marking it to indicate the dog was "not wanted." Davila stated that after he took the dog to the animal control facility, a veterinarian decided to euthanize the dog.

The State also presented the testimony of Dr. Robert Granberry, a veterinarian. After examining the photos of the infected dog, Granberry opined that the animal probably had scabies or sarcoptic mange in an advanced stage. Granberry explained that sarcoptic mange is caused by a microscopic mite, and causes severe itching and hair loss. He described how the disease is debilitating in an advanced stage, causing weight loss and lethargic behavior. Granberry stated that the condition was very easy to cure with the right product, typically requiring one or two chemical dips. Granberry further stated that a sulfur product in the proper chemical suspension could treat the condition, but plain sulfur with oil would not help. Granberry opined that it had taken two to five years for sarcoptic mange to cause the dog to deteriorate to the condition shown in the photos, but he admitted it could have occurred in six months. Granberry testified that the dog in the photographs had been neglected in its care.

After viewing this evidence in the light most favorable to the verdict, we conclude that a rational jury could have found all elements of the State's allegation. The evidence demonstrates that an animal in Martinez's custody did not receive the medical treatment it needed to survive. The decision to euthanize the animal upon its arrival at the shelter shows the unreasonableness of failing to treat the animal. Although Martinez maintains that no evidence of intent or knowledge exists, a jury may infer a culpable mental state from the circumstances surrounding the offense of cruelty to animals. *See Pine v. State*, 889 S.W.2d 625, 629 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). Here, the evidence indicates obvious and severe illness, and a long-neglected need for treatment. Presented with such an obvious need for treatment, a jury could easily infer intent or knowledge. As a result, the evidence is legally sufficient to support the verdict. However, even viewed without the light of the prism of "in the light most favorable to the prosecution," the evidence is still sufficient.

After the State rested its case, the defense called two witnesses. One of those witnesses, Porfirio Arana, Martinez's landlord, testified that Martinez rescued and cared for abandoned dogs. He explained that Martinez asked him many times to find out if Granberry would make a house call to vaccinate her dogs, and that he had taken Granberry to Martinez's home in March 1995 to vaccinate the dogs. Arana explained that he thought Martinez had treated one of her dogs with a home remedy of sulfur and oil. Arana stated that after the infected dog was seized, Martinez called him, and described her as "real upset." But when shown the photographs of the infected dog, Arana admitted that he would have taken the dog for treatment.

Martinez herself testified about her pets and the seizure of the infected dog. According to Martinez, the animal control officer came to her home because a woman reported that she was beating a dog in her sleep. Martinez testified she had tried to get people to help her take the dog to the veterinarian, but no one would help her. She explained that she tried to treat the dog herself with Vaseline and sulfur, but that the dog was too big and fast and would move away. Martinez stated she typically fed her dogs Purina dog food mixed with canned dog food, twice daily. When questioned why she did not take the dog somewhere for help, she responded that she did not go to Granberry because she thought he would come to her house, and she did not call city authorities because they would put the dog to sleep. Martinez admitted, however, to having taken a smaller dog to Granberry for treatment, but she explained that the seized dog was too big for her to put in a car. Upon examination of the photographs of the infected dog, Martinez recognized that the dog was sick, but stated that she believed the dog would recover because it kept eating and running.

While this evidence establishes some effort to care for the infected dog, the evidence is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Despite Martinez's efforts to vaccinate her pets and her attempts to treat the infected dog, the evidence is factually sufficient to support the verdict. We overrule Martinez's issues challenging the sufficiency of the evidence.

### Admission of the Animal Control Report

■ Martinez also presents three issues to challenge the admission of the consent form which allowed the animal control investigator to seize her dog. Martinez argues that the form was inadmissible because it contained inadmissible hearsay and violated her right to confront witnesses guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution. Despite these complaints on appeal, at trial, Martinez's attorney objected to the admission of the form on hearsay grounds only. Therefore, she waived her complaints about her right to confrontation.

■ As for her assertion that the form contained hearsay, the form was admissible as non-hearsay. *See* TEX.R. EVID. 801(e)(2)(B). By signing the consent form, Martinez manifested an adoption or belief in the truth of the assertions contained within the form, making it admissible as an admission by a party opponent. *See Moore v. State,* 999 S.W.2d 385, 401 (Tex. Crim.App.1999) (citing TEX.R.CRIM. EVID. 801(e)(2)(B)). Although she now complains that she did not understand what she was signing at the time she signed the form, her lack of understanding was not raised when the form was admitted into evidence. Because the trial court properly addressed Martinez's hearsay objection, we overrule Martinez's issues concerning the admission of the consent form.

### Conclusion

The jury, faced with the evidence discussed above, had no choice but to find Martinez guilty. She should not have accepted the dog or kept it without treatment for so long. The facts, however, offer compelling mitigation.[1]

---

1. In my view, anyone visiting this home should have realized Martinez, poor, isolated, and elderly, needed assistance. One would think the first question these authorities would ask after, "Where is the dog?" would be, "Do you have any children, grandchil-

The judgment of the trial court is affirmed.

Concurring opinion by ALMA L. LÓPEZ, Justice.

LÓPEZ, Justice, concurring.

If there was ever a case that screamed for prosecutorial discretion, it is this case. Ms. Martinez, an 83 year old widow, is known in her neighborhood for taking in, and caring for, stray dogs-acts most of us would never consider. Yet for whatever reason, Martinez takes in homeless animals like the one at issue here, and somehow manages to stretch her meager income to care for animals that would otherwise roam our city's streets. While the jury faced with the evidence discussed in the majority opinion had no choice but to find Martinez guilty, I question why this case was ever prosecuted at all.

Martinez lives on $400.00 per month in Social Security benefits. She has no transportation. While the evidence demonstrates that Martinez did not do everything that was needed to properly care for the infected dog, the evidence indicates that she did what she felt she could do. Nonetheless, nothing indicates that Martinez is a cruel person. When the animal cruelty investigator went to Martinez's home to investigate the complaint of animal cruelty, Martinez surrendered the infected dog at the investigator's request. Notably, however, the investigator also found healthy dogs at Martinez's home. Those dogs were separated from the infected dog to prevent them from becoming ill.

All the testimony from Martinez's trial indicates that the infected dog required professional treatment-care that costs money that Martinez did not have. With the dog in the hands of the animal control authorities, what purpose was served by prosecuting this little old woman? Surely, nothing was gained except to alienate a senior member of our community from the justice system that should protect her.

Although this case should never have been prosecuted, the damage done could have been minimized by the trial court. Cruelty to animals is a Class A misdemeanor, punishable by up to one year in jail. The trial court sentenced Martinez to the maximum punishment. A one-year sentence, even though probated, seems unnecessarily severe in circumstances such as these. Perhaps the trial court intended to exercise leniency by probating Mar-

---

dren, friends, or relatives who can help you so this does not happen again?" After Davila investigated she surrendered the dog and was compliant. Perhaps she could have been educated without the rigors of a full courtroom experience-nothing more than a helpful follow-up visit for the benefit of the other, healthy dogs.

Failure to provide necessary care is cruelty to animals and a criminal offense, even though the record in this case reveals neglect arising out of a lack of resources rather than outright cruelty. Whether a case like this one rises to the level of outrageousness suggested by intentional behavior is properly for others to decide. Cf. *Tilbury v. State*, 890 S.W.2d 219, 220 (Tex.App.-Fort Worth 1994, no pet.) (upholding conviction of cruelty to animals committed by shooting and killing two dogs). Whether there is a need to deter others similarly situated from committing this violation is also beyond our judgment. Martinez lives on four-hundred dollars monthly Social Security benefits, has no transportation, her husband passed away two months prior to trial, and the record failed to reveal any helpful family members. She did what she could short of calling for the dog's removal. Performing community service at an animal shelter may be difficult in light of Martinez's prior hardship in traveling to the veterinarian. Perhaps another Good Samaritan will appear to assist her. We can only hope Martinez's love for animals will find an appropriate outlet in her community service, allowing this sad experience to become meaningful.

tinez's sentence and ordering her to perform 100 hours of community service at the local animal shelter. Nonetheless, performing this service will require numerous trips to and from the shelter, each trip requiring money for transportation. On a $400.00 a month income, even this effort will be a challenge.

Hopefully, Martinez's love for animals will facilitate her efforts to perform her community service and to put this experience behind her. As for my part in this case, I concur in the judgment only.