

# NUMBER 13-17-00222-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**FREDERICK JACOB EVANS,**                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                 **Appellee.**

**On appeal from the County Court at Law No. 3
of Williamson County, Texas.**

# MEMORANDUM OPINION[1]

**Before Justices Contreras, Longoria, and Hinojosa
Memorandum Opinion by Justice Hinojosa**

Appellant Frederick Jacob Evans appeals his conviction for cruelty to a non-

livestock animal, a class-A misdemeanor. *See* TEX. PENAL CODE ANN. § 42.092(b)(3), (c)

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the appeal has been transferred to this Court from the Third Court of Appeals in Austin, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

(West, Westlaw through 2017 1st C.S.).   A jury returned a guilty verdict.   The trial court assessed punishment at 180 days' confinement in the county jail and a $200 fine, suspended imposition of the sentence, and placed appellant on community supervision for a period of fifteen months.   By two issues, appellant argues that (1) there is legally insufficient evidence that appellant committed the offense with a culpable mental state, and (2) the written judgment does not comport with the trial court's oral pronouncement of appellant's sentence.   We affirm as modified.

## I.   BACKGROUND

Appellant was charged by information with "intentionally, knowingly, or recklessly fail[ing] unreasonably to provide necessary care" for his dog "Xena, a red Australian Kelpie canine mix . . . by failing to take [Xena] to the veterinarian after it suffered a serious injury[.]"   *See id.*   Appellant leased a townhouse unit in Williamson County, Texas, where he resided with his wife.   Appellant's neighbor Jennifer Hsu testified that she noticed that appellant's dog Xena was limping in late March of 2015.   Hsu saw Xena on appellant's balcony and took photographs of the dog to document the injury.   Toward the end of April, Hsu emailed the manager of the rental complex, expressing concern for Xena's ongoing injury.   Around that same time period, Hsu heard the sound of a screaming dog coming from appellant's townhouse.   Hsu testified that Xena was unable to put her full weight on her hind leg.   The trial court admitted Hsu's photographs and her email correspondence into evidence.

Echo Pinson, the assistant manager at the complex, testified that she was in the

process of evicting appellant for non-payment of rent. On May 12, 2015, Pinson entered appellant's townhouse through the garage to see if the residence was abandoned. Upon entry, Pinson observed Xena tied to a water heater in the garage. Pinson described the garage as hot and humid, and she observed feces and blood near Xena. Pinson took photographs of Xena, which were admitted into evidence. Pinson observed an injury to Xena's right hind leg. She described the injury as follows: "It was a bone that was protruding, not through the skin, but just visibly not where it should have been." Pinson went inside the townhouse to retrieve food and water for Xena. Pinson testified that it seemed like Xena wanted to sit down but was unable to do so. She called the non-emergency number to report the situation to animal control. While she was on the phone, appellant arrived at the residence and took Xena from Pinson. Appellant then left with the dog in his vehicle.

Rebecca Hancock, an officer with the Austin Police Department, testified that she was assigned to conduct a welfare check on Xena. Officer Hancock reported to the residence and spoke to Pinson, but she was unable to make contact with appellant. She took pictures of the area where Xena was tied up and noticed blood stains and feces nearby. The photographs were admitted into evidence. Officer Hancock later reached appellant by phone. During their conversation, appellant stated that he had not taken Xena to a veterinarian but that he had researched the costs of surgeries.

Appellant later surrendered Xena to the Austin Animal Center where veterinarian Kathy Lund examined the dog. Dr. Lund testified that she examined Xena on May 18,

2015. She stated that Xena exhibited grade three lameness on a scale of one to four indicating increasing severity. This diagnosis meant that Xena was not using her injured leg most of the time. Dr. Lund gave Xena an opioid for pain. She explained that Xena's right rear leg was much smaller than her left due to muscle atrophy from nonuse. The trial court admitted photographs taken by Dr. Lund which showed "an obvious protrusion" of the bone in her right leg. The trial court then admitted radiographs of Xena's injury which Dr. Lund described as indicating a fractured femur. Dr. Lund explained that the bone in the area of the injury was "trying to remodel and fix itself," an occurrence which takes weeks following an injury. Xena required surgery to repair the fracture, but her joint could not be preserved because of the delay in treatment. Dr. Lund stated that, at the time of surgery, the injury was six to eight weeks old, which indicates that the injury occurred in late March of 2015. Dr. Lund believed that if Xena had not received the surgery, she would have been permanently lame. She believed that the injury was so obvious that the average person would have known that Xena needed veterinary care.

Appellant testified that he adopted Xena from an animal shelter in late February of 2015 as a gift for his wife. On the day Pinson discovered Xena in the garage, appellant claimed that he was only gone for forty minutes. Appellant stated that Xena began limping after playing with his other dog. He also stated that Xena fell down the stairs of his residence in early May of 2015. Appellant estimated that this occurred three to four days before Pinson discovered Xena in the garage. Appellant admitted that he did not seek veterinary care for Xena. He noticed Xena's bone protruding, but he stated he was

4

surprised when he heard Xena suffered a fractured femur. Nevertheless, appellant had searched online for possible reasons for Xena's limp and treatment options. Appellant stated that he brought Xena to the Austin Animal Center because he could not continue to care for her due to his work schedule and financial situation.

The jury returned a guilty verdict. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant argues that the evidence is insufficient to support his conviction "because there is no evidence that [he] was even reckless about the injuries to [Xena]."

## A. Standard of Review and Applicable Law

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). We resolve any inconsistencies in the testimony in favor of the verdict.

5

*Bynum v. State*, 767 S.W.2d 769, 776 (Tex. Crim. App. 1989).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* To establish cruelty to non-livestock animals, the State must prove that (1) appellant (2) intentionally, knowingly, or recklessly (3) failed unreasonably to provide necessary care (4) for an animal in appellant's custody. TEX. PENAL CODE ANN. § 42.092(b)(3). "Necessary care" is defined as the care that is "required to maintain the animal in a state of good health." *Id.* § 42.092(a)(7).

Both appellant and the State focus their arguments on whether there was sufficient evidence that appellant acted with a reckless mental state. The Texas Penal Code provides that:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(c) (West, Westlaw through 2017 1st C.S.). In addressing recklessness, we must examine the defendant's conduct to determine whether:

6

(1) the alleged act or omission, viewed objectively at the time of its commission, created a "substantial and unjustifiable" risk of the type of harm that occurred; (2) that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation . . . [;] (3) the defendant was consciously aware of that "substantial and unjustifiable" risk at the time of the conduct; and (4) the defendant consciously disregarded that risk.

*Williams v. State*, 235 S.W.3d 742, 755–56 (Tex. Crim. App. 2007). A person's culpable mental state may be inferred from his acts, words, and conduct, and the surrounding circumstances. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) ("Mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs."). Further, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *see Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) ("[O]ne's acts are generally reliable circumstantial evidence of one's intent."). Accordingly, a jury may infer a culpable mental state from the circumstances surrounding the offense of cruelty to animals, including the animal's physical condition. *Martinez v. State*, 48 S.W.3d 273, 276 (Tex. App.—San Antonio 2001, pet. ref'd).

## B.    Analysis

Appellant argues that the evidence establishes that he "only noticed lameness but did not know that the injury required immediate medical care." Therefore, appellant maintains that the evidence "at most shows only that he acted with criminal negligence." We disagree with appellant's characterization of the record. Appellant's argument

7

ignores the obvious and severe nature of the injury as established by multiple witnesses. Both Pinson and Dr. Lund described seeing the bone in Xena's hind leg protruding at an awkward angle. As a result of the injury, the muscle in the leg was significantly atrophied due to nonuse. Appellant himself admitted that he was aware of the obvious injury and that he noticed Xena limping for weeks. Xena suffered from a high level of pain because of the fractured leg, such that she was immediately given a powerful opioid once she received veterinary attention. The obvious nature of the injury constitutes evidence from which the jury could infer recklessness. *See Martinez*, 48 S.W.3d at 276 ("Here, the evidence indicates obvious and severe illness, and a long-neglected need for treatment. Presented with such an obvious need for treatment, a jury could easily infer intent or knowledge."). Appellant also stated that that he conducted online research concerning Xena's injury, including possible treatment and surgery options. Further, Dr. Lund estimated that the fracture was six to eight weeks old at the time appellant surrendered Xena to the Austin Animal Center. The jury could infer from this evidence that appellant was consciously aware of a substantial risk associated with failing to seek veterinary care but consciously disregarded that risk. *See Williams*, 235 S.W.3d at 755–56. Further, having examined appellant's conduct, we conclude that appellant's disregard of the associated risk constituted a gross deviation from the standard of care a reasonable person would have exercised in the same situation. *See id.*

Viewing the evidence in the light most favorable to verdict, we conclude that a rational jury could have found that appellant acted recklessly in failing unreasonably to

provide necessary care for Xena. *See Johnson*, 364 S.W.3d at 293–94. We overrule appellant's first issue.

### III. MODIFICATION

By his second issue, appellant argues that the trial court's written judgment should be modified because it does not conform to the trial court's oral pronouncement of sentence. The State joins appellant on this issue.

Courts are required to pronounce sentence orally in the defendant's presence. TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(a) (West, Westlaw through 2017 1st C.S.); *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). The judgment, including the sentence assessed, is merely a written manifestation of that oral pronouncement. *See* TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1 (West, Westlaw through 2017 1st C.S.); *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998). When there is a conflict between the oral pronouncement of sentence in open court and the sentence set out in the written judgment, the oral pronouncement controls. *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). In such cases, the solution is to reform the written judgment to conform to the sentence that was orally pronounced. *Id.*; *see* TEX. R. APP. P. 43.2(b).

The trial court orally sentenced appellant to 180 days' confinement, suspended for fifteen months, and a $200 fine. The written judgment differs from the oral pronouncement in that it sets appellant's sentence at 365 days' confinement and assesses a $4,000 fine. We agree that the written judgment must be modified to comport

9

with the trial court's oral pronouncement of sentence. *See Thompson*, 108 S.W.3d at 290. We sustain appellant's second issue.

## IV. CONCLUSION

We modify the trial court's judgment to reflect a sentence of 180 days' confinement in the county jail, probated for fifteen months, and a $200 fine. We affirm the trial court's judgment as modified.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
14th day of June, 2018.