

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-18-00183-CR

---

DAVID SALINAS, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 450th District Court
Travis County, Texas
Trial Court No. D-1-DC-17-900141

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

When David Salinas and his girlfriend, Casey, brought their miniature poodle, Frisco, to Emergency Animal Hospital (EAH) in Austin,[1] he was in shock and severe pain and unable to stand. An examination of Frisco revealed that he had significant bruising, internal injuries, and twenty-three rib fractures. Consequently, Salinas was convicted by a Travis County jury of cruelty to a non-livestock animal.[2] The trial court sentenced Salinas to confinement in the Travis County Jail for one year, suspended his sentence, and placed him on community supervision for two years.

On appeal, Salinas complains that (1) insufficient evidence supports his conviction, (2) collateral estoppel barred the relitigation of whether he treated Frisco in a cruel manner, and (3) the trial court's written judgment should be modified to reflect his sentence as pronounced at trial. We find that (1) sufficient evidence supports Salinas' conviction, and (2) he has forfeited his collateral estoppel complaint. However, we modify the trial court's judgment to reflect the sentence pronounced at trial.

## I.    Sufficient Evidence Supports Salinas' Conviction

### A.    Standard of Review

In our determination of legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893,

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]*See* TEX. PENAL CODE ANN. § 42.092(b)(1) (Supp.).

912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979));

*Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). In our rigorous

review, we focus on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18

(Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion,

and we defer to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*,

214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*,

235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In drawing reasonable inferences, the jury "may

use common sense and apply common knowledge, observation, and experience gained in the

ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet.

struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J.,

concurring)). Further, since the jury is the sole judge of the credibility of the witnesses and the

weight to be given their testimony, it may "believe all of a witnesses' testimony, portions of it, or

none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). Finally, when the jury's

decision is based on an evaluation of witness credibility, we give it almost complete deference.

*Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

In our review, we consider "'events occurring before, during and after the commission of

the offense and may rely on actions of the defendant which show an understanding and common

design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d

107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and

independently to the guilt of the appellant, as long as the cumulative force of all the incriminating

circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Under its indictment and the relevant statute, the State was required to prove beyond a reasonable doubt that Salinas (1) intentionally or knowingly[3] (2) in a cruel manner (3) caused serious bodily injury (4) to Frisco (5) by striking him with an unknown object. *See* TEX. PENAL CODE ANN. § 42.092(b)(1). "'Cruel manner' includes a manner that causes or permits unjustified or unwarranted pain or suffering." TEX. PENAL CODE ANN. § 42.092(a)(3) (Supp.). Salinas only challenges the sufficiency of the evidence that he (1) intentionally or knowingly (2) caused Frisco's injuries (2) by striking him with an unknown object.[4]

---

[3]Although the indictment also included the alternative that Salinas acted recklessly, the trial court only charged the jury on intentionally and knowingly.

[4]Although not challenged, upon our review of the evidence, we find that there was sufficient evidence supporting the jury's findings that Frisco sustained serious bodily injuries and that they were inflicted in a cruel manner.

In this case, the trial court's jury instructions included the definitions of "intentionally" and "knowingly" both as to the nature of conduct and the result of conduct. "A person acts intentionally, or with intent, with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct." TEX. PENAL CODE ANN. § 6.03(a). "A person acts intentionally, or with intent, with respect . . . to a result of his conduct when it is his conscious objective or desire to . . . cause the result." *Id.* "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." TEX. PENAL CODE ANN. § 6.03(b). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.*

## A. The Evidence at Trial

Viewed in the light most favorable to the trial court's judgment, the evidence at trial showed that Salinas adopted Frisco, an approximately eight-year-old, white, miniature poodle, from the Austin Humane Society (AHS) on October 10, 2016. While at AHS, Frisco had no behavioral issues, and a veterinary examination before adoption showed no significant health issues.

Before she went to work on the morning of April 22, 2017, Casey either took Frisco for a walk or let Frisco go outside. She did not recall having any issues putting him on his leash, and she did not remember anything out of the ordinary that morning. Salinas remained at their apartment with Frisco. When she got off work that afternoon, Casey called Salinas, who told her that Frisco did not want to go for a walk, was acting weird, and snipped at him when he tried to

5

pick him up. Salinas did not say anything to her about an accident or about Frisco being injured. When she got to the apartment, Frisco was in his kennel and did not come out or act excited to see her, which was not normal. Instead, he lay in his kennel, looked sad, and did not acknowledge her in any way. When she tried to get him out of his kennel, Frisco snipped at her, which he had never done before. At that point, Casey knew something was wrong with Frisco, and they decided to take him to a veterinarian.

The initial examination of Frisco at EAH showed that he was in shock, breathing hard, not walking, in pain, and had a high heart rate, but had no open wounds or road rash and no blood or debris in his coat. Frisco was injected with pain medications before being evaluated further and was later placed on intravenous pain medication. Bruising could be seen under his fur, so he was partially shaved to get a better look at the extent of the bruising. Shaving revealed significant bruising on Frisco's back, belly, front left leg, neck, head, and left ear. He also had a laceration on his tongue that was consistent with biting it as a result of trying to get away from something or trauma to the mouth. The bruising got bigger and darker over time, indicating that the injuries occurred within a couple of hours before his presentation at EAH.

After this initial evaluation, Allison Tate, a veterinarian at EAH, spoke with Salinas and Casey to find out what happened to Frisco. Initially, she thought he might have been hit by a motor vehicle; however, Salinas told her that he had come home and taken Frisco for a walk and that at some point in the walk, Frisco did not want to walk anymore. When he tried to pick him up, Frisco tried to bite him. After he got back home, they decided something was wrong. They denied that

6

anything had happened on the walk, that anything had fallen on him, that he had been hit by a car, that any other person had been in the apartment, or that another dog had attacked him.

Further diagnostic examination showed that Frisco's liver enzymes were highly elevated, which Tate testified indicated that the liver cells had been damaged. Although she said this could occur from natural causes, it was also consistent with blunt force trauma. In addition, x-rays revealed that Frisco had ten acute[5] fractures to seven[6] of his ribs on the left side, nine acute fractures to six[7] of his ribs on the right side, and four healing fractures to four other ribs on his right side. In addition, x-rays showed that Frisco had bruised lungs, a punctured lung, gas in the chest cavity, and gas under his skin.

Three veterinarians who treated Frisco and a forensic veterinarian who reviewed his records testified at trial. They testified that Frisco's injuries were consistent with multiple blunt force traumas and that there was a substantial risk of death from the injuries. They also testified that Frisco would be symptomatic almost immediately because of the severe amount of pain he experienced and the increasing difficulty in breathing. All of them agreed that the number of fractures far exceeded those seen as a result of a motor vehicle accident.

After determining the extent of Frisco's injuries, Tate explained them to Salinas and Casey and asked them if he got hit by a car, kicked by a horse, or attacked by another animal, or if someone had hit him with a baseball bat. They denied all of these possible explanations for

---

[5]An acute fracture is less than ten to fourteen days old.

[6]Three ribs on the left side had two fractures.

[7]Three ribs on the right side had two fractures.

7

Frisco's injuries. They also offered no other explanation for the injuries. Tate then notified the Austin Police Department (APD). Matthew Ferrara, an officer with APD, responded to the call. He interviewed Salinas and Casey at EAH and described their demeanor as very calm and nonchalant. He testified that neither of them offered any explanation for what happened to Frisco, and that both denied that he had experienced any trauma.

Salinas was also interviewed at the APD, and a recording of his interview was played for the jury. In his interview, Salinas stated that he had returned to the apartment around 3:00 p.m. that afternoon and put Frisco on the patio. After cleaning the apartment, he gave Frisco a bath and took him for a walk. During the walk, Frisco stopped walking and bit him when he tried to pick him up. Salinas took him back to the apartment and put him in his kennel until Casey got home. He said he was the only person with Frisco that day, and although given multiple opportunities, he gave no explanation for Frisco's injuries. He denied punching or hitting the dog, but admitted that someone beat the dog with something.

**B.      Analysis**

Salinas argues that there was only circumstantial evidence that Frisco's injuries were caused by being struck by an unknown object, that the State's witnesses conceded that at least some of the injuries could have been caused by a motor vehicle or crushing injury, and that the State's witnesses admitted that they did not know what caused his injuries. Because there were no eye witnesses to the infliction of Frisco's injuries, the State had to rely on circumstantial evidence of the likely cause of Frisco's injuries. A defendant's guilt can be established by circumstantial

8

evidence alone as long as the cumulative force of such evidence is sufficient to support the conviction. *Ramsey*, 473 S.W.3d at 809; *Hooper*, 214 S.W.3d at 13.

Even though they did not know the exact instrumentality used, the veterinarians all agreed that the injuries were caused by multiple blunt force traumas. Further, even though they testified that it was possible that some of the injuries could also have been caused by a motor vehicle accident, or a crushing injury by some unknown object, they all agreed that not all of the acute injuries could have been caused in that manner. Finally, Salinas denied these types of causes in his own statements to Tate and the investigating officers. From the extent and severity of Frisco's injuries, and the testimony of the veterinarians, the jury, using common sense and applying their common knowledge and experience and resolving all conflicts in the testimony, could have reasonably inferred that Frisco's injuries resulted from being struck by an object.

Salinas also argues that there was no evidence linking him to Frisco's injuries or that his actions were intentional or knowing. However, the evidence showed that Frisco's injuries were inflicted within a couple of hours of his presentation at EAH. Salinas' own statements established that he was the only person who had access to Frisco during that time period. Based on this evidence, a jury could have reasonably inferred that Salinas was the person who inflicted the injuries on Frisco.

In addition, as Salinas acknowledges, a defendant's culpable mental state may be inferred from the acts, words, and conduct of the defendant, the manner of committing the crime, and the nature of his victim's injuries. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (en banc); *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999). This same rule applies in animal

9

cruelty cases. *Martinez v. State*, 48 S.W.3d 273, 276 (Tex. App.—San Antonio 2001, pet. ref'd). In this case, the evidence established that Frisco sustained multiple external and internal injuries resulting from multiple blunt force traumas to the head, neck, back, abdomen, both sides of his torso, and the groin area. Based on this evidence, the jury could have reasonably inferred that Salinas intentionally or knowingly engaged in the conduct.

After reviewing all the evidence in the light most favorable to the trial court's judgment, we find that any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 912. Therefore, we find that sufficient evidence supports Salinas' conviction. We overrule Salinas' first issue.

## II.     Salinas Forfeited His Collateral Estoppel Complaint

In his second issue, Salinas contends that the trial court erred when it denied his motion to quash based on collateral estoppel. Salinas argues that a justice court's finding that he did not "cruelly treat" Frisco made in a prior proceeding precluded relitigation of the issue of whether he injured Frisco in a cruel manner in this case. Consequently, he argues, the indictment alleging that he intentionally or knowingly, in a cruel manner, caused serious bodily injury to Frisco should have been quashed.

Under the doctrine of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit relating to the same event or situation." *Murphy v. State*, 239 S.W.3d 791, 794 (Tex. Crim. App. 2007) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). The scope of facts actually litigated in the prior proceeding will determine the scope of the factual finding

10

barred by collateral estoppel. *Id.* at 795. "The very fact or point at issue in the pending case must have been determined in the prior proceeding." *Id.*

> [I]n reviewing any collateral estoppel claim, both the trial and appellate courts must "examine the record of [the prior proceeding], taking into account the pleadings, evidence, charge, and other relevant matters," to determine whether a rational factfinder could have grounded its decision on a fact other than the specific fact that the party now claims has been resolved in his favor.

*Guajardo v. State*, 109 S.W.3d 456, 459–60 (Tex. Crim. App. 2002)) (second alteration in original) (quoting *Ashe*, 397 U.S. at 444) (citing *Ex parte Taylor*, 101 S.W.3d 434, 441 (Tex. Crim. App. 2002)). This necessarily requires an appellate court to "review the entire testimonial record in the first proceeding to determine precisely what specific facts were actually decided and whether the resolution of those facts necessarily forecloses further proceedings." *Id.* at 461.

It is the defendant's burden "to demonstrate, by examination of the record of the first proceeding, that the [factual] issue he seeks to foreclose was actually decided in the first proceeding." *Id.* at 460 (alteration in original) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (quoting *Dowling v. United States*, 493 U.S. 342, 350 (1990))). Without a sufficient record, the defendant will forfeit his appellate complaint. *See id.* at 462.

In this case, the state instituted a seizure proceeding under Section 821.022 of the Texas Health and Safety Code against Salinas and Casey in a justice court in Travis County, seeking the seizure of Frisco for being cruelly treated. *See* TEX. HEALTH & SAFETY CODE ANN. § 821.022(b). The only evidence of the justice court proceeding admitted into evidence at the trial in this case was the Order of Disposition, which included a finding of fact that Salinas "ha[d] not cruelly treated [Frisco]."

11

Under the Texas Health and Safety Code, "'[c]ruelly treated' includes tortured, seriously overworked, unreasonably abandoned, unreasonably deprived of necessary food, care, or shelter, cruelly confined, or caused to fight with another animal." TEX. HEALTH & SAFETY CODE ANN. § 821.021(1). "Tortured" is not defined under the Texas Health and Safety Code, but torture has been "held to include every act or omission whereby unnecessary or unjustifiable pain or suffering is caused to an animal." *Barnett v. State,* 35 S.W.2d 441, 443 (Tex. Crim. App. 1931). Salinas argues that the definition of torture is substantially the same as the definition of "cruel manner" under the Texas Penal Code and that, since the justice court already determined this fact issue in his favor, the State was collaterally estopped from relitigating the issue in this case. However, we are unable to decide this issue since Salinas has failed to provide us with a sufficient record. *See Guajardo*, 109 S.W.3d at 462.

The justice court made a general finding that Salinas had not cruelly treated Frisco. As noted above, the definition of cruelly treated includes more than just tortured. Without a complete record of the testimony that was presented at the justice court, we are unable to determine whether the justice court made its finding because it found that Salinas had not tortured Frisco, or because it found that Salinas had not committed one of the other acts included in the definition of cruelly treated.

In our determination of the collateral estoppel issue, we may not speculate about the basis of the factual findings in the prior proceeding. *See id.* at 461. Rather, we may only make our determination from a sufficient record of the prior proceeding. Since Salinas has failed to provide

12

us with a sufficient record, he has forfeited this complaint. *See id.* at 462. We overrule Salinas' second issue.

## III.    The Judgment Must Be Modified

In his third issue, Salinas asserts that the punishment reflected in the trial court's written judgment should be modified to conform with the punishment pronounced at trial. The State concedes that the trial court erred and does not oppose the modification sought by Salinas.

Salinas was convicted of cruelty to a non-livestock animal, which was a state jail felony at the time the offense was committed. Act of May 21, 2007, 80th Leg., R.S., ch. 886, § 2(c), 2007 Tex. Gen. Laws 2163, 2165 (amended 2017) (current version at TEX. PENAL CODE § 42.092(c-1)). Section 12.44(a) of the Texas Penal Code allows the trial court in certain instances to "punish a defendant who is convicted of a state jail felony by imposing the confinement permissible as a punishment for a Class A misdemeanor." TEX. PENAL CODE ANN. § 12.44(a). A Class A misdemeanor may be punished by a fine of up to $4,000.00, confinement in a county jail for up to one year, or both a fine and confinement. TEX. PENAL CODE ANN. § 12.21.

In its oral pronouncement at the sentencing hearing, the trial court sentenced Salinas to "one year in the Travis County jail," suspended the sentence, and placed him on community supervision for two years. However, the trial court's written judgment recites Salinas' punishment and place of confinement as "ONE (1) YEARS STATE JAIL DIVISION, TDCJ," and under the section titled "Punishment Options," places an "X" beside the paragraph titled "Confinement in State Jail or Institutional Division." Thus, the sentence pronounced by the trial court imposed a sentence and place of confinement (i.e., county jail) that is "permissible as a punishment for a

13

Class A misdemeanor," in accordance with Section 12.44(a). But its written judgment recites a place of confinement (i.e., state jail) that is not permitted as a punishment for a Class A misdemeanor.

A trial court has no authority or discretion "to orally pronounce one sentence in front of the defendant, but then enter a different written judgment outside the defendant's presence." *Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014) (citing *Ex parte Madding*, 70 S.W.3d 131, 136 (Tex. Crim. App. 2002)). Further, fairness and due process require that the defendant have his sentence orally pronounced in his presence "so that he may object and offer a defense to any terms he believes are inappropriate." *Id.* (citing *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004); *Madding*, 70 S.W.3d at 136). "A written judgment is simply the 'declaration and embodiment' of that pronouncement." *Id.* (quoting *Taylor*, 131 S.W.3d at 502; *Madding*, 70 S.W.3d at 135). "Therefore, when there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls." *Id.* (citing *Taylor*, 131 S.W.3d at 502).

We have the authority to modify judgments to speak the truth when the necessary information is available to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we sustain Salinas' third issue, and we modify the trial court's judgment to show Salinas' place of confinement as the Travis County Jail.

For the reasons stated, we modify the trial court's judgment by replacing "STATE JAIL DIVISION, TDCJ" with "TRAVIS COUNTY JAIL" in the section titled "Punishment and Place of Confinement," and under the section titled "Punishment Options," we delete the "X" beside the

14

paragraph titled "Confinement in State Jail or Institutional Division" and place an "X" beside the paragraph titled "County Jail—Confinement/Confinement in Lieu of Payment."

We affirm the trial court's judgment, as modified.


                                        Ralph K. Burgess
                                        Justice

Date Submitted:     July 29, 2019
Date Decided:       August 1, 2019

Do Not Publish